CLARENCE N. PARIS AND WIFE, ETHEL PARIS v. MICHAEL KREITZ, JR.,
P.A., DR. LELAND S. AVERETT, JR., AND HIGH POINT MEMORIAL HOS-
PITAL, INCORPORATED

No. 8419SC814

(Filed 2 July 1985)

1. **Rules of Civil Procedure § 15.2; Physicians, Surgeons and Allied Professions § 12.1— motion to amend complaint to conform to evidence—new cause of action—denied**

   The trial court in a medical malpractice action did not err by denying plaintiffs' motion to amend their complaint to conform to evidence that one of the defendants had altered medical records because plaintiffs sought to add an additional cause of action against which defendants were not prepared to defend and to which they had not consented. G.S. 1A-1, Rule 15(b).

2. **Physicians, Surgeons and Allied Professions § 21— medical malpractice—directed verdict on punitive damages—proper**

   The trial court in a medical malpractice action did not err by granting defendants' motion for directed verdict on punitive damages where the evidence permitted the inference that one defendant altered emergency room records but plaintiffs neither alleged nor attempted to prove that the document alteration aggravated the injury caused by the alleged malpractice. Moreover, any error in refusing to submit punitive damages to the jury was harmless because plaintiffs failed to establish their claim of malpractice.

3. **Trial § 6— medical malpractice—admission of only part of stipulation—no error**

   The trial court in a medical malpractice action did not err by refusing to allow the entire stipulation concerning a defendant's alteration of emergency room records to be read to the jury. The omitted paragraphs were not relevant to the factual issues before the jury and there was no purpose relevant to the trial of the case to be served by informing the jury of arguments counsel agreed not to make.

4. **Physicians, Surgeons and Allied Professions § 15.2— medical malpractice—defendant allowed to testify as expert—no error**

   The trial court in a medical malpractice action did not err by allowing one of the defendants, a doctor, to testify as an expert witness even though he had not been listed as an expert. The doctor was a party and was listed as a potential witness and the fact that he testified as an expert could not have unfairly surprised plaintiffs. Moreover, plaintiffs objected on the grounds that the doctor was not qualified as an expert rather than on surprise, plaintiffs did not move for a continuance, and the substance of the testimony was put before the jury by another doctor.

5. **Physicians, Surgeons and Allied Professions § 15.2; Hospitals § 5— doctors qualified as experts on standard of nursing care—duty of nurse to disobey doctor's order**

In a medical malpractice action arising from an emergency room diagnosis; there was no error in allowing three doctors to testify that the treatment afforded plaintiff in the emergency room was in conformity with professional nursing standards and that it would not have been in conformity with nursing standards for a nurse to disobey a physician's treatment instructions. Physicians are clearly acceptable experts with regard to the standard of care for nurses, and, while a nurse may disobey the instructions of a physician where those instructions are obviously wrong and will result in harm to the patient, the duty to disobey does not extend to situations where there is a difference of medical opinion.

6. **Physicians, Surgeons and Allied Professions § 15— medical malpractice—expert cross-examined about testimony in other cases**

There was no error in a medical malpractice case in permitting the cross-examination of plaintiffs' expert witness about his role as an expert in two earlier unrelated murder cases. The expert's testimony was limited to damages, the jury found no negligence and never reached the issue of damages, plaintiffs' objection came after several questions had been asked and answered, the question objected to was never answered, and there was no showing of prejudice.

7. **Physicians, Surgeons and Allied Professions § 15— medical malpractice—statement by a doctor at time of treatment—excluded**

There was no error in a medical malpractice action in excluding a statement made by a doctor during his treatment of plaintiff where the statement was admitted during re-redirect examination.

8. **Physicians, Surgeons and Allied Professions § 15— medical malpractice—cross-examination of doctor based on speculative condition—irrelevant**

The trial court did not err in a medical malpractice action by sustaining defendants' objection to what defendant would have done if he had seen plaintiff in the emergency room and plaintiff was in the same condition that he was in the next morning in defendant's office. The uncontradicted evidence was that plaintiff's condition had worsened when defendant saw him in the office.

9. **Physicians, Surgeons and Allied Professions § 15.2— standard of care for physician's assistant—doctor not qualified as expert**

The trial court in a medical malpractice action did not err by sustaining defendants' objection to plaintiffs' expert testimony as to the standard of care for physician's assistants. A physician's assistant is not subject to the same standard of practice as a doctor, and while plaintiffs' witness was duly qualified as an expert vascular surgeon, no attempt was made to show that he was qualified to testify as to the standard of care for physician's assistants.

10. **Physicians, Surgeons and Allied Professions § 15— opinion on whether a defendant exercised reasonable care—objection sustained—no prejudicial error**

There was no prejudicial error in a medical malpractice action in sustaining objections to the testimony of plaintiffs' expert on whether defendant exer-

cised reasonable care and diligence. Although defendants' objections were sustained, the answers were never stricken from the record and plaintiffs' doctor expressed his opinion several times in response to other questions.

**11. Hospitals § 3— medical malpractice by private doctor in emergency room — directed verdict for hospital proper**

In a medical malpractice action arising from the treatment of plaintiff at an emergency room, the trial court did not err by granting a directed verdict for defendant hospital where there was no showing of how the handling of plaintiff's case by the physician and his assistant was so obviously negligent that the nurse was obliged to intervene and order a different treatment, there was no evidence of a standard by which the hospital's handling of the case could be judged by the jury, no indication from persons qualified to testify as to what should have been done under the circumstances, and no testimony that plaintiff's observable manifestations of pain were so severe as to cause a reasonable hospital employee to act differently.

**12. Rules of Civil Procedure § 59— medical malpractice — denial of new trial — no error**

There was no error in the denial of plaintiffs' motion for a new trial in a medical malpractice action where there was evidence from which the jury could have found that defendants were negligent or that they were not negligent.

APPEAL by plaintiffs from *DeRamus, Judge.* Judgment entered 28 February 1984 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 3 April 1985.

This is a civil action in which plaintiffs seek compensatory and punitive damages from defendants for injuries and losses allegedly resulting from defendants' negligence in the medical treatment of plaintiff Clarence N. Paris.

At all times pertinent to this case, plaintiff Clarence Paris was a retired 70-year-old man. Ethel Paris was his wife. Defendant Dr. Leland Averett was a physician engaged in general practice in High Point. Defendant Michael Kreitz worked for Dr. Averett as a physician's assistant.

On 27 November 1980, after returning from Thanksgiving dinner with his family around 7:30 p.m., Mr. Paris went to bed around 11:00 p.m. and shortly thereafter began to experience pain in his lower left leg and foot. Mrs. Pat Simmons, plaintiffs' daughter, her husband, Donald Simmons, and Russell Hill, plaintiffs' grandson and his wife, Regina, were all summoned to the Paris household. Mrs. Simmons called Mr. Paris' personal physi-

cian, Dr. Wallace. She was informed that Dr. Averett was taking Dr. Wallace's calls while Dr. Wallace was out of town. Mrs. Simmons told the answering service to have Dr. Averett meet Mr. Paris at High Point Memorial Hospital, the corporate defendant in this case (hereafter Hospital).

Testimony for plaintiffs indicated that Mr. Paris arrived at the hospital at approximately 11:40 p.m. Mr. Paris and witnesses for the Hospital testified that he was immediately registered and taken into a treatment room by a nurse's aide. Hospital records show that he was registered at 1:07 a.m. Nurse Judy Garrett, a hospital employee on duty in the emergency room, tried to call Dr. Averett, but contacted instead his assistant, Michael Kreitz; Dr. Averett was out of town.

Mr. Paris was examined initially by Nurse Garrett and nurse's aide Brenda Grant, both employees of defendant Hospital. Although a physician was on duty in the emergency room, he did not examine Mr. Paris since Hospital personnel believed that either Dr. Averett or Michael Kreitz was coming. Nurse Garrett and Brenda Grant noted that Mr. Paris had been in pain for over thirty minutes, that his left leg was pale and cold to the touch, and that his toenails were blue. Defendant Kreitz arrived at approximately 1:30 a.m. and based on his examination of Mr. Paris, made the same general observations as Nurse Garrett in addition to noting symptoms of decreased blood supply to the lower left leg and foot.

Defendants Kreitz and Averett, as well as Nurse Garrett and Brenda Grant, testified that Kreitz called Dr. Averett and discussed the case over the telephone. Plaintiffs offered evidence that no call was made. Kreitz noted his diagnosis of "peripheral vascular insufficiency" on Mr. Paris' record, prescribed a mild painkiller and sent him to bed with instructions to call at Dr. Averett's office in the morning. On the prescription sheet, Kreitz noted "probable surgical appointment in morning."

Mr. Paris, accompanied by Pat and Don Simmons, arrived at Dr. Averett's office at approximately 9:00 the next morning. Dr. Averett returned from his hospital rounds at about 10:30 a.m. and examined Mr. Paris. He noted the same symptoms that Kreitz had noted the night before. Plaintiffs' testimony indicated that the pain had spread up Mr. Paris' leg during the night. Based on

these observations, Dr. Averett diagnosed an occlusion of the lower left leg. He referred Mr. Paris to Dr. Kenneth Shull, a vascular surgeon, who confirmed the diagnosis.

Plaintiff was admitted to defendant Hospital on an emergency basis that afternoon. Surgery was scheduled immediately and began at 2:00 p.m. Dr. Shull removed some thrombus material or blockage from Mr. Paris' upper leg. This operation appeared successful but three days later, the occlusion reoccurred and a second operation was performed. Rather than attempting to remove the blockage, Dr. Shull performed a bypass using a vein graft. Although circulation was restored, Mr. Paris' lower leg continued to be numb in places, indicating some permanent nerve damage. Mr. Paris returned home.

On 22 January 1981, Mr. Paris again experienced acute pain in his left leg. On Dr. Shull's advice, plaintiff was taken to the Hospital. Dr. Shull determined that the graft was completely occluded and, in a third operation, replaced it with a synthetic graft. This operation was unsuccessful and Mr. Paris developed gangrene in his lower left leg. As a result, his left leg was amputated above the knee on 27 January 1981.

Plaintiffs instituted this suit by filing a complaint on 3 August 1982. Plaintiffs alleged that Michael Kreitz was negligent in that (1) he failed to exercise reasonable care and due diligence, (2) he attempted to diagnose Mr. Paris' problem without proper medical training, (3) his diagnosis was obviously incorrect, (4) he failed to consult a physician or other qualified medical professional in making his diagnosis, and (5) he prescribed improper treatment. Plaintiffs alleged that Dr. Averett was negligent in that (1) he failed to exercise reasonable care and due diligence, (2) he failed to attend personally to Mr. Paris, (3) he permitted defendant Kreitz to diagnose and prescribe treatment for Mr. Paris, and (4) he failed to treat Mr. Paris properly or promptly. Plaintiffs also alleged as a basis for punitive damages against Dr. Averett, that his negligence amounted to a reckless disregard of Mr. Paris' rights and safety. Plaintiffs alleged that the Hospital was negligent in that (1) it failed to adopt or enforce accepted rules and procedures regulating the practice of physician's assistants in emergency cases, (2) it failed to assure that plaintiff was seen and treated by a licensed and trained physician, and (3) the Hospital's

agent, Nurse Garrett, failed to see that Mr. Paris received required medical treatment by a trained physician though she knew that he required treatment by a trained physician. Plaintiffs claimed that the negligence of defendant was the proximate cause of Mr. Paris' leg amputation and of the physical, mental and emotional suffering that accompanied it.

In a second count, Ethel Paris alleged that the amputation had adversely affected her relationship with Mr. Paris, that she had been deprived of love, affection and conjugal relations, and that defendants' negligence was the proximate cause of her loss. Plaintiffs claimed compensatory damages in excess of $10,000 and punitive damages.

Defendants Kreitz and Averett filed a response and defendant Hospital filed a separate response. Both responses denied the material allegations of the complaint.

The matter was tried before a jury. Both sides presented expert testimony, discussed *infra.* Prior to trial, one of plaintiffs' attorneys noticed a discrepancy between the copy of the emergency room record of Mr. Paris' 27-28 November 1980 visit previously furnished him and the original record. Plaintiffs' attorney's copy had a handwritten notation on it that read, "Seen & agree—L.S. Averett, M.D." The original had the notation, "Case discussed by phone. Seen & agree—L.S. Averett, M.D." The copy had been prepared by Hospital personnel and bore a stamp that read, "Copy from confidential patient records." A records clerk for defendant Hospital testified that the original was kept in a locked room to which only treating physicians and authorized Hospital personnel had access.

Plaintiffs wished to get the fact of the discrepancy to the jury. In order to present the necessary testimony before the jury without the necessity for withdrawal from the case by plaintiffs' counsel, the parties, through counsel, entered into the following stipulation:

1. That a copy of the document entitled "Emergency Records" and designated as Plaintiffs' Exhibit 12A was received by Plaintiffs' counsel Mr. L. P. McLendon, Jr. as an enclosure in a letter of transmittal from High Point Memorial Hospital, Inc. designated as Plaintiffs' Exhibit 12;

2. Exhibit 13 is a copy of the same original document from which Exhibit 12A was prepared;

3. That counsel for the defendants will make no contention in their argument to the jury or otherwise that there has been any change, alteration in, or modification to said Exhibit 12A and 13 since they were received by Mr. McLendon;

4. That counsel for the defendants will make no contention in their argument to the jury or otherwise that there was writing or printing on the original document of which Exhibit 12A and 13 are copies at the time the copies were made which is not visible or legible on Exhibit 12A or 13 by virtue of poor quality of the copy;

5. That in the event of any change in addition to modification of original document of which Exhibit 12A and 13 are copied [sic] has been made since Exhibits 12A and 13 were transmitted to Mr. McLendon by High Point Memorial Hospital, Inc., such modification was not made by any agent or employee of High Point Memorial Hospital, Inc.; was made without the knowledge or consent of any employee or agent of High Point Memorial Hospital, Inc. and Exhibits 12A and 13 are not being introduced into evidence against High Point Memorial Hospital, Inc.

At trial, plaintiffs' counsel was permitted to read only paragraphs 1, 2, and 5 to the jury.

At the close of plaintiffs' evidence, defendants moved separately for directed verdicts with respect to all of the claims. The court reserved ruling on the motions until the close of all the evidence, when it allowed the motions with respect to the punitive damages claim against Dr. Averett and the claim for compensatory damages against the Hospital.

The following issues were submitted to the jury which answered them as indicated:

1. Were the following health care providers negligent in providing health care to the plaintiff, Clarence N. Paris, in the early morning hours of November 28, 1980? (Answer "yes" or "no" in the spaces next to the contentions of plain-

tiffs to indicate whether or not such contention has been proved by the greater weight of the evidence.)

Michael Krietz Jr., P.A.

a. <u>No</u>   Michael Krietz, Jr., P.A., did not provide care in accordance with the applicable standard of care by failing to call Dr. Averett from the emergency room, resulting in delay of appropriate diagnosis and treatment of Clarence N. Paris' left leg.

b. <u>No</u>   Michael Krietz, Jr., P.A., did not exercise reasonable care and diligence in using his medical skills to determine the symptoms or status of Clarence N. Paris' condition at the emergency room, resulting in delay of appropriate diagnosis and treatment.

. . .

c. <u>No</u>   Michael Krietz, Jr., P.A. did not exercise reasonable care and diligence in using his medical skills to fully and accurately relate to Dr. Averett the symptoms or status of Clarence N. Paris' condition at the emergency room, resulting in delay of appropriate diagnosis and treatment.

Dr. Leland S. Averett, Jr.

d. <u>No</u>   Dr. Leland S. Averett, Jr., did not provide care in accordance with the applicable standard of care by failing to diagnose the condition of Clarence N. Paris as related to him by Mr. Krietz, and failing to treat it as a medical emergency requiring immediate personal medical attention from a licensed physician or specialist.

Having found no negligence, the jury did not reach the issues of proximate cause or damages. Plaintiffs' motions for judgment n.o.v. and for a new trial were denied and plaintiffs appealed.

*Brooks, Pierce, McLendon, Humphrey and Leonard, by L. P. McLendon, Jr., George W. House, and S. Leigh Rodenbough, IV, for plaintiff-appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell and Jernigan, by James O. Blount, Jr., and Timothy P. Lehan, for defendant-appellees Michael Kreitz and Dr. Leland Averett.*

*Tuggle, Duggins, Meschan and Elrod, by Joseph E. Elrod, III, J. Reed Johnston, Jr., and Sally A. Lawing for defendant-appellee High Point Memorial Hospital.*

EAGLES, Judge.

I

Plaintiffs' first three assignments of error concern the discrepancy between the original of the emergency room record prepared in connection with Mr. Paris' 27-28 November 1980 visit and the copy provided by defendants to plaintiffs' counsel. In their first argument, plaintiffs contend that it was error for the trial court to deny their motion to amend the complaint to add falsification of medical records as an additional act of negligence entitling them to damages and thereby to conform the complaint to the evidence. In their second argument, plaintiffs contend that the trial court erred in granting Dr. Averett's motion for directed verdict on the issue of punitive damages because the evidence of his falsification of medical records amply supported that claim. In their third argument, plaintiffs contend that the trial court erred in refusing to permit plaintiffs' counsel to read to the jury the entire stipulation reached by the parties with respect to the altered emergency room records.

The essence of plaintiffs' three arguments and related assignments of error is that Dr. Averett's alleged alteration of Mr. Paris' emergency room record constitutes gross negligence or wanton or wilful conduct which, if proven, would entitle them to punitive damages. Since they presented evidence tending to show that Dr. Averett altered the records, they contend that they are permitted under G.S. 1A-1, Rule 15(b) to amend their pleadings to encompass this evidence and allow for the recovery of punitive damages and to submit the issue to the jury. We are not persuaded by plaintiffs' arguments and find their assignments of error on this question to be without merit.

The established law in North Carolina regarding the recovery of punitive damages in tort actions is that "the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed." *Newton v. Insurance Co.*, 291 N.C. 105, 112, 229 S.E. 2d 297, 301 (1976). When the underlying action is grounded in negligence, punitive damages

may be recovered where the negligence is gross or wanton. "Conduct is wanton when in conscious and intentional disregard of or indifference to the rights and safety of others." *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E. 2d 393, 397 (1956). When the tort necessarily involves intentional wrongdoing, as in fraud, punitive damages are appropriate when the actionable conduct is accompanied by "some element of aggravation." *Newton, supra* at 112, 229 S.E. 2d at 301. Aggravated conduct has been variously defined but in the context of an intentional tort usually consists of insult, indignity, malice, oppression, or bad motive in addition to the tort. *Oestreicher v. Stores*, 290 N.C. 118, 225 S.E. 2d 797 (1976); *Swinton v. Realty Co.*, 236 N.C. 723, 73 S.E. 2d 785 (1953); *Baker v. Winslow*, 184 N.C. 1, 113 S.E. 570 (1922). *See generally*, 5 N.C. Index 3d *Damages* Sec. 7 (1977 and Supp. 1984).

Whether the tort is negligent or intentional, a party's entitlement to punitive damages can only arise in connection with the tortious act; it may not constitute a separate cause of action. "If the complainant fails to plead or prove his cause of action, then he is not allowed an award of punitive damages because he must establish his cause of action as a prerequisite for a punitive damages award." *Oestreicher v. Stores, supra* at 134, 225 S.E. 2d at 808. *See also Clemmons v. Insurance Co.*, 274 N.C. 416, 163 S.E. 2d 761 (1968); *Gaskins v. Sidbury*, 227 N.C. 468, 42 S.E. 2d 513 (1947). In order to recover punitive damages, plaintiffs would have to allege and prove gross or wanton negligence or intentional misconduct in connection with Dr. Averett's alleged malpractice and some resulting injury.

[1] With these principles in mind, we return to plaintiffs' first argument: that the issue raised by the evidence of the altered document and tried by consent of the parties was "an additional act of negligence entitling plaintiffs to damages" and that the trial court should have allowed their motion under G.S. 1A-1, Rule 15(b), to amend their complaint accordingly. Under the facts of this case, this contention is without merit.

Plaintiff's complaint contains the following allegation:

XIX. The conduct of the Defendant Averett under all circumstances in not personally attending and overseeing the diagnosis and treatment of Mr. Paris in the early morning hours of November 28, 1980, when he knew or should have

known that Mr. Paris' condition was serious and grave and emergency treatment was immediately called for, amounted to a reckless and wanton disregard of and indifference to the rights and safety of Mr. Paris.

While this allegation mentions no particular instance of aggravated conduct, we believe that it is sufficient, under the rule of *Shugar v. Guill*, 304 N.C. 332, 283 S.E. 2d 507 (1981), and G.S. 1A-1, Rule 8(a)(1) to put Dr. Averett on notice of the punitive damages claim, to provide an understanding of the nature and basis of the claim, and to allow him to prepare his defense.

Plaintiff argues, however, that the issue purportedly raised by the pleadings and tried by the consent of the parties was "an act of malpractice" or "an additional act of negligence." As stated at trial and on appeal, this constitutes a separate cause of action, not just an additional issue. G.S. 1A-1, Rule 15(b) provides in part as follows:

If evidence is objected to at the trial on the ground that it is not within the issues raised by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

While defendants were not prejudiced by the admission of evidence relating to plaintiffs' punitive damages claim, having been put on notice by the complaint, and could take remedial measures at trial, such as entering into a stipulation, to minimize the damage of any surprise, they were not prepared to defend against a separate cause of action based on the alleged alteration and clearly did not impliedly consent to the trial of that action. Allowing the amendment proffered by plaintiffs would have allowed plaintiffs to plead a new cause of action and would have severely prejudiced defendants. "Despite the broad remedial purposes of this provision, however, Rule 15(b) does not permit judgment by ambush." *Eudy v. Eudy*, 288 N.C. 71, 76, 215 S.E. 2d 782, 786 (1975) (partially overruled on other grounds in *Quick v. Quick*, 305 N.C. 446, 290 S.E. 2d 653 (1982) ); *Fowler v. Johnson*, 18 N.C. App. 707, 198 S.E. 2d 4 (1973).

Since the issue purportedly raised by the evidence was not tried by the consent of the parties, it was not error for the court to refuse to amend the pleadings. Whether defendants waived their objection to the evidence is therefore immaterial. Moreover, as we understand plaintiffs' argument on appeal, the purpose of the proposed amendment was to allow plaintiffs to use the evidence of the altered record in support of their claim for punitive damages. From the record and transcript it appears that the documents were admitted subject to the stipulation and were used in exactly this fashion. We do not perceive how plaintiffs were harmed in their malpractice action by the court's refusal to allow the amendment.

[2] In their second argument, plaintiffs claim that the court erred in granting Dr. Averett's motion for directed verdict on the punitive damages issue. Plaintiffs argue that their evidence clearly permits the inference that Dr. Averett falsified the emergency room record and was clearly sufficient to allow the issue of punitive damages to be submitted to the jury. In support of this argument, plaintiffs cite the cases of *Henry v. Deen*, 310 N.C. 75, 310 S.E. 2d 326 (1983); *Hinson v. Dawson, supra*; and *Mazza v. Huffaker*, 61 N.C. App. 170, 300 S.E. 2d 833, *disc. rev. denied*, 309 N.C. 192, 305 S.E. 2d 734 (1983), *pet. for reconsideration denied*, --- N.C. ---, 313 S.E. 2d 160 (1984). According to plaintiffs' argument these cases stand for the proposition that alteration of medical records is an act of aggravated, intentional, wanton or grossly negligent conduct for which punitive damages are recoverable in a medical malpractice action. Plaintiffs contend that because the evidence of Dr. Averett's gross negligence was clearly sufficient to take the issue of punitive damages to the jury, the directed verdict should not have been allowed. We disagree.

Plaintiffs correctly point out that the evidence permits the inference that Dr. Averett altered the emergency room record of Mr. Paris' 27-28 November 1980 visit. It appears that this evidence constitutes the entire basis for plaintiffs' punitive damages claim; no other evidence has been called to our attention to support the claim. Plaintiffs also correctly note that our Supreme Court in *Henry v. Deen, supra*, held that a party could state a claim for damages in a medical malpractice action when the defendant physician had falsified patient records in an attempt to frustrate recovery by the party injured by his negligence. In

*Henry v. Deen,* which involved an appeal from a dismissal under G.S. 1A-1, Rule 12(b)(6), the plaintiffs' allegations were held to be sufficient to state a claim for relief thus allowing him the opportunity to prove them at trial and possibly be compensated for the resulting injury.

Here, however, we have already held that plaintiffs could not amend their complaint to include a claim based on the alleged document alteration. Their attempt in this argument to use the same evidence as the basis for their punitive damages claim must also fail because they neither allege nor attempt to prove that the document alteration aggravated the injury caused by the alleged malpractice. On the basis of similar reasoning, another panel of this Court held in *Azzolino v. Dingfelder,* 71 N.C. App. 289, 322 S.E. 2d 567 (1984), *disc. rev. allowed,* 313 N.C. 327, 327 S.E. 2d 887 (1985), also a medical malpractice action, that defendant physicians' attempt to hide their malpractice by "fabricating a trail of evidence" after the fact could not be the basis of a punitive damages claim where there was no evidence that their deception aggravated their tortious conduct.

Neither our holding here nor Judge Hill's opinion in *Azzolino* should be construed as any indication that defendants' alleged behavior was acceptable, that we condone the alleged acts or that conduct of the type alleged may never be the basis for a punitive damages award. Defendant's conduct, if plaintiffs' allegations are true, is reprehensible and evinces a moral deficiency and disregard for the rights of others that we regard as odious and repugnant. Even so, we are bound by the law and the Rules of Civil Procedure which require that in order to be the basis of a recovery, a claim must be properly pleaded and proved. Here, plaintiffs fell short of the mark.

Even if it was error for the trial court to refuse to submit the issue of punitive damages to the jury, this error could not possibly have harmed plaintiffs. As we noted above, punitive damages can only be awarded where the underlying cause of action has been proved and a basis for compensatory damages has been established. *Oestreicher v. Stores, Clemmons v. Insurance Co.* both *supra.* Since plaintiffs failed to establish their claim of malpractice, as discussed more fully *infra,* there was no tortious conduct to which their claim for punitive damages could attach.

[3]   As to plaintiffs' third contention that it was error for the court to refuse to allow the entire stipulation to be read to the jury, defendant's argument is directly on point. Stipulations are looked upon favorably by the courts and their use is encouraged. *Rural Plumbing and Heating v. H. C. Jones*, 268 N.C. 23, 149 S.E. 2d 625 (1966). Stipulations remove the necessity for proving certain facts. *State v. Watson*, 303 N.C. 533, 279 S.E. 2d 580 (1981). Paragraphs 1, 2 and 5 of the stipulation are stipulations of fact that resolve evidentiary disputes relating to certain issues involved in the trial. As such they were properly read to the jury. Paragraphs 3 and 4, on the other hand, were agreements between the parties as to what counsel for the defense would or would not argue to the jury; they resolve no evidentiary conflicts and remove nothing from the realm of controversy. We can see no purpose relevant to the trial of this case that would be served by informing the jury of arguments that counsel agreed *not* to make. Those paragraphs were not relevant to the factual issues before the jury. It was not error to refuse to allow them to be read. This contention is without merit.

## II

Plaintiffs' fourth contention is that the trial court erred in denying their motion for a new trial on the grounds that the verdict was contrary to the greater weight of the evidence. Their fifth contention is that the trial court erred in allowing a directed verdict for defendant Hospital. Together, these contentions raise questions regarding the sufficiency of the evidence. Plaintiffs' remaining contentions raise questions regarding specific evidentiary rulings by the trial court. Before addressing the general questions, we consider plaintiffs' specific contentions.

### a.

[4]   Plaintiffs contend in their sixth argument that the trial court erred in allowing Dr. Averett to testify as an expert when defendants had not identified him as an expert witness in their response to plaintiffs' interrogatories. Citing the recent cases of *Green v. Maness*, 69 N.C. App. 292, 316 S.E. 2d 917, *rev. denied*, 312 N.C. 622, 323 S.E. 2d 922 (1984) and *Willoughby v. Wilkins*, 65 N.C. App. 626, 310 S.E. 2d 90 (1983), *disc. rev. denied*, 310 N.C. 631, 315 S.E. 2d 697 (1984), plaintiffs contend that defendant's tactic was an attempt to subvert the rules of discovery and to take

unfair advantage of plaintiffs. In *Willoughby*, a medical malprac-
tice action, counsel for defendants filed supplemental responses to
discovery identifying their expert witnesses so close to the date
of trial that plaintiffs were unable to depose them fully or to
cross examine them effectively. There the discovery requests had
been pending for more than a year and plaintiffs had filed several
motions to compel discovery. The motions to compel were not act-
ed on until after the trial court had peremptorily set the case for
trial. We held that plaintiffs had been deprived of their right to
effective cross examination and awarded them a new trial.

In *Green*, defendant produced a new expert witness with a
new defense theory "virtually on the eve of trial." The court de-
nied plaintiffs' motion for a continuance. Relying on *Willoughby*,
the *Green* court held that plaintiffs were entitled to a new trial
because the court's refusal to allow the continuance had unfairly
deprived plaintiffs of the opportunity to conduct effective cross
examination.

Plaintiffs in this case claim that the prejudice resulting from
the "surprise" use of Dr. Averett as an expert is that defendants
were allowed to place before the jury the testimony of an expert
who, because he was a party to the action, would be listened to
more carefully and given more weight by them. We disagree.

Though Dr. Averett was not listed as an *expert* witness, he
was a party and was listed as a potential witness. We hold that it
was not error for the trial court to let him testify as an expert
witness. This case differs from *Willoughby* and *Green* in several
respects. We note first that plaintiffs here did not object to Dr.
Averett's testimony on the grounds of surprise but on the
grounds that he was not qualified as an expert. Having objected
on this specific ground, they are precluded from arguing a dif-
ferent ground on appeal. *State v. Sellars*, 52 N.C. App. 380, 278
S.E. 2d 907, *disc. rev. denied and app. dismissed*, 304 N.C. 200,
285 S.E. 2d 108 (1981). *See generally*, Brandis, N.C. Evidence, Sec.
27 (1982 and Supp. 1983). Secondly, we note that plaintiffs here, as
contrasted to *Green*, did not move for a continuance in order to
prepare for Dr. Averett's expert testimony. Third, Dr. Averett
was listed by both parties as a witness and was a named party
defendant. Plaintiffs knew that he was a physician in general
practice and therefore more qualified than the jury to testify as

to issues of medical causation. Plaintiffs certainly anticipated that Dr. Averett would testify and should have anticipated that he could be qualified to testify as an expert. Fourth, the substance of Dr. Averett's testimony—that the delay in diagnosis did not cause the loss of Mr. Paris' leg—was later put before the jury by the testimony of Dr. Shull. Further, as contrasted with *Green*, by using Dr. Averett as an expert witness, defendants were not attempting to introduce a new theory into the trial.

While Dr. Averett should have been listed as an expert, the fact that he testified as an expert for defendants could not have unfairly surprised these plaintiffs. Moreover, the prejudice allegedly resulting from this "surprise" does not rise to the level encountered in *Willoughby* and *Green*. Plaintiffs' contention is without merit.

b.

[5]  In their seventh argument, plaintiffs contend that the trial court erred in allowing Doctors Averett, Shull and Johnson to testify as to the standard of care for nurses in hospitals. The substance of their testimony was that it would not have been in conformity with standards of nursing practice for a nurse to disobey a physician's treatment instructions and that the treatment afforded Mr. Paris in the emergency room was in conformity with professional nursing standards. In their assignments of error, plaintiffs contend that the doctors were not qualified to testify as experts on the standard of care for nurses. In their brief, they argue that the testimony should have been excluded because it directly contradicts the judicially established standard that permits a nurse to disobey instructions that are obviously negligent. We disagree.

Physicians are clearly acceptable experts with regard to the standard of care for nurses. *Haney v. Alexander*, 71 N.C. App. 731, 323 S.E. 2d 430 (1984), *cert. denied*, 313 N.C. 329, 327 S.E. 2d 889 (1985). While a nurse may disobey the instructions of a physician where those instructions are obviously wrong and will result in harm to the patient, *Byrd v. Marion General Hospital*, 202 N.C. 337, 162 S.E. 738 (1932); *Bost v. Riley*, 44 N.C. App. 638, 262 S.E. 2d 391 (1979), *disc. rev. denied*, 300 N.C. 194, 269 S.E. 2d 621 (1980), the duty to disobey does not extend to situations where there is a difference of medical opinion. Plaintiffs' argument on

this point assumes that there was obvious negligence on the part of Kreitz and Dr. Averett in diagnosing Mr. Paris' problem, that the treatment prescribed by them resulted in his injury and that its potential for harm was obvious. In our opinion, none of plaintiffs' assumptions on these key issues is supported by the evidence. While the negligence of Kreitz and Averett may be a question of fact, it is clear that the negligence was not so obvious as to require Nurse Garrett to disobey an instruction or refuse to administer a treatment. Nurse Garrett's observations of Mr. Paris agreed with those of Kreitz. Any disagreement or contrary recommendation she may have had as to the treatment prescribed would have necessarily been premised on a separate diagnosis, which she was not qualified to render. *Byrd v. Marion General Hospital, supra.* This assignment of error is overruled.

c.

[6] In their eighth argument, plaintiffs contend that it was error to allow defendants to cross examine their expert witness, Dr. Selwyn Rose, regarding his role as an expert witness in two earlier unrelated cases. Dr. Rose had testified as an expert in two well-publicized murder cases and, over objection, was cross examined about his role in these cases. On appeal, plaintiffs contend that defendants were allowed to place before the jury material of questionable relevancy that had the effect of inflaming passion and prejudice against Dr. Rose and his testimony. As plaintiffs concede, counsel must be given a wide latitude on cross examination to test the qualifications of an opposing party's expert. Plaintiffs contend defendants' questioning of Dr. Rose exceeded permissible bounds. We disagree.

We note first that Dr. Rose's testimony was limited to the issue of damages. Since the jury found no negligence, they never reached the issue of damages. Plaintiffs' counsel's objection came after several questions in this line had been asked and answered and though the objection was overruled, the question objected to was never answered. Accordingly, there was no evidence admitted to which plaintiffs made a timely objection. Further, our reading of the transcript fails to disclose how plaintiffs were prejudiced by defendants' questions or by Dr. Rose's answer. Without a showing of prejudice, a finding of error is not warranted. *Collins v. Lamb*, 215 N.C. 719, 2 S.E. 2d 863 (1939). *See generally*, Brandis, *supra*, Section 9. Plaintiffs' contention is without merit.

### d.

**[7]** In their ninth argument, plaintiffs contend that the trial court erred when it excluded testimony regarding statements allegedly made by Dr. Shull during his treatment of Mr. Paris. Plaintiffs' witnesses were asked what Dr. Shull had said regarding the delay in treating Mr. Paris. Defendants' objections were sustained. There was no error and no prejudice by these objections being sustained.

Later in the trial, on re-re-redirect examination, Pat Simmons testified over objection by defendants that Dr. Shull had said to her, "I'm not sure that I can save your father's leg due to the lapse of time of the onset and the time I get him into surgery." The statement that plaintiffs argue had been erroneously excluded came before the jury in Pat Simmons' testimony. This assignment of error is overruled. *Collins v. Lamb, supra;* Brandis, *supra,* Section 9.

### e.

**[8]** During cross examination of Dr. Averett, he was asked what he would have done if he had seen Mr. Paris in the emergency room and Mr. Paris had been in the same condition as he was in Dr. Averett's office the next morning. The trial court sustained defendants' objection to this question and plaintiffs contend it was error to do so. They argue that cross examination is properly limited by considerations of relevance and competence and that this question was not objectionable under this liberal standard. Plaintiffs' argument here is not persuasive.

Counsel is permitted a liberal cross examination but his questions must nevertheless be based on evidence that is before the court and not on mere conjecture. *State v. Satterfield,* 300 N.C. 621, 268 S.E. 2d 510 (1980); Brandis, *supra,* Section 35. Here, all the evidence tends to show that Mr. Paris' condition was worse when Doctor Averett saw him in the office than it had been in the emergency room. There is no evidence to the contrary. Having no basis in the evidence of record, Dr. Averett's answer to the question would have been irrelevant. Plaintiffs' assignment of error is without merit.

f.

[9] Plaintiffs next contend that it was error to exclude the testimony of their expert, Dr. Neville, as to the standard of care for physician's assistants. Dr. Neville was asked whether the treatment afforded Mr. Paris in the emergency room on 27 and 28 November 1980 by defendants Kreitz and Dr. Averett was in accordance with the standards of practice among doctors with similar training and experience to Dr. Averett in communities like High Point. Defendants objected and the court sustained the objections to the portion of the question pertaining to physicians' assistants. Plaintiffs' contention that this was error is without merit.

Where there is an offer of expert testimony as to an applicable standard of professional care for physicians' assistants, the witness must first be shown to have a familiarity with the standard of practice (1) among physicians' assistants with similar training and experience to the person in question, (2) who are situated in the same or similar communities, (3) at the time the alleged malpractice occurred. *See Haney v. Alexander, supra.*

While Dr. Neville had been duly qualified as an expert vascular surgeon of national repute and had testified in that capacity, no attempt was made to show that he was qualified to testify as to the standard of care for physicians' assistants. Plaintiffs' argument that physicians' assistants are subject to the same standards of care as the physicians for whom they work is without merit. G.S. 90-21.12 provides that a "health care provider" is subject to the "standards of practice among members of the *same health care profession with similar training and experience* situated in the same or similar communities. . . ." [Emphasis added.] Clearly Kreitz, a physician's assistant, was not subject to the same standard of practice as Dr. Averett, a medical doctor. *See Wall v. Stout,* 310 N.C. 184, 311 S.E. 2d 571 (1984) (regarding elevated standards of practice for medical specialists).

g.

[10] In their final assignment of error, plaintiffs contend that the trial court erred prejudicially in sustaining defendants' objection to plaintiffs' direct examination of Dr. Neville on whether in his opinion, based on the applicable standards of practice, Dr. Aver-

ett exercised reasonable care and diligence in his diagnosis and treatment of Mr. Paris on 27 and 28 November 1980. We disagree.

Defendants objected to each question in a series of similar questions. Defendants' objection to the first question was sustained after Dr. Neville had answered, "He did not." Defendants' objection to a second similar question was initially overruled and Neville answered, "He did not." After a bench conference, defendants' second objection was sustained but Dr. Neville's answers were never stricken from the record. Notwithstanding that defendants' objections were sustained twice, Dr. Neville's answer remained before the jury. Moreover, several times in response to other questions, Dr. Neville expressed his opinion (1) that Dr. Averett did not meet the applicable standard of care; (2) that Dr. Averett's initial diagnosis of peripheral vascular insufficiency was wrong in that the symptoms indicated an occlusion; (3) that Dr. Averett should have admitted Mr. Paris to the hospital and consulted a vascular surgeon immediately; and (4) that "the initial problem with the delay in diagnosis was the proximate cause of [Mr. Paris'] amputation."

Based on the testimony of Dr. Neville that was before the jury, we perceive no prejudice to plaintiffs. This assignment of error is without merit.

### III

#### a.

[11] In their fifth argument, plaintiffs contend it was error for the trial court to grant a directed verdict for defendant Hospital. The test for whether a directed verdict is proper is well established. The purpose of a motion for a directed verdict is to test the legal sufficiency of the evidence to support a verdict for the plaintiff and to submit the contested issue to a jury. *E.g.*, *Manganello v. Permastone*, 291 N.C. 666, 231 S.E. 2d 678 (1977); *Wallace v. Evans*, 60 N.C. App. 145, 298 S.E. 2d 193 (1982). Where a motion for directed verdict is made at the close of the evidence, the court must consider the evidence in the light most favorable to the party opposing the motion and give that party the benefit of every reasonable inference. *E.g.*, *Cook v. Export Leaf Tobacco Co.*, 50 N.C. App. 89, 272 S.E. 2d 883 (1980), *disc. rev. denied*, 302 N.C. 296, 279 S.E. 2d 350 (1981). Any contradictions, conflicts or

inconsistencies in the evidence must be resolved in favor of the opposing party. *Hart v. Warren*, 46 N.C. App. 672, 266 S.E. 2d 53, *disc. rev. denied*, 301 N.C. 89, --- S.E. 2d --- (1980). The court should deny the motion if there is more than a scintilla of evidence to support the plaintiffs' *prima facie* case. *Wallace v. Evans, supra*. *See generally*, 11 N.C. Index 3d, *Rules of Civil Procedure*, Section 50 (1978 and Supp. 1984).

In this case, plaintiffs argue that the evidence was sufficient to establish defendant Hospital's negligence on two theories and that the motion for directed verdict should have been denied. Under the theory of *respondeat superior*, plaintiffs argue that the Hospital is liable for the negligence of its employees. *Byrd v. Marion General Hospital, supra*. Under the theory of corporate negligence, plaintiffs argue that the Hospital violated its direct duty to them to use reasonable care in the treatment of Mr. Paris. *Bost v. Riley, supra*.

With respect to the theory of *respondeat superior*, plaintiffs argue that the treatment of Mr. Paris in the emergency room on 27 and 28 November 1980—the diagnosis and prescription of Defendants Kreitz and Averett—was obviously negligent and that Nurse Garrett was under an obligation either to overrule the diagnosis or to order an alternative treatment. We disagree.

Though plaintiffs in their brief repeatedly characterize the treatment of Mr. Paris by Kreitz and Dr. Averett as "obviously negligent," the record reveals no evidentiary support for this assertion. As noted earlier, plaintiffs' argument assumes that Nurse Garrett was in a position to diagnose Mr. Paris. Plaintiffs correctly concede that nurses are not responsible for the diagnosis or treatment of patients. *Byrd v. Marion General Hospital, supra*. Plaintiffs' assertions that Mr. Paris was not afforded proper treatment by Hospital employees are supported only by evidence that he did not get the treatment that he and his daughter and son-in-law thought he should have. There is no showing of how the handling of Mr. Paris' case by the physician and his assistant was so obviously negligent that Nurse Garrett was obliged to intervene and order a different treatment. Whether Kreitz or Averett were negligent at all was, at the time of the motion, not an established fact. What evidence of negligence there was, in our opinion, was not sufficient to warrant submit-

ting the question of the Hospital's negligence to the jury on the theory of *respondeat superior.*

Similarly, we do not think that the evidence would have supported a jury finding of negligence on the theory of corporate liability. Applying *Bost v. Riley, supra,* to the present case, plaintiffs claim that the Hospital employees "may not close their eyes to the commission of obvious negligence by a physician or a physician's assistant who has been granted the privilege of using the emergency room." This argument is no different from plaintiffs' argument under the *respondeat superior* theory and fails for the same reasons.

Plaintiffs contend in addition that the Hospital's negligence existed also in its apparent lack of regard for Mr. Paris' obvious pain and his daughter's request that he be examined by the emergency room staff physician. While there is evidence that Mr. Paris was experiencing some pain and that Mrs. Simmons requested that he be seen by the staff physician, we can find no evidence that the Hospital or its employees violated any standard of care owed to Mr. Paris. There is no evidence of a standard by which the Hospital's handling of the case could be judged by a jury; no indication from persons qualified to testify as to what should have been done under the circumstances; and no testimony that Mr. Paris' observable manifestations of pain were so severe as to cause a reasonable hospital employee to act any differently. The evidence clearly shows that Mr. Paris was not ignored. He was observed and examined upon arrival by Nurse Garrett and her assistant who determined that his condition was not urgent enough to warrant being seen by the on-duty physician. Further, the Hospital employees were aware that either Dr. Averett or Michael Kreitz was on the way. There is no evidence that the Hospital employees did anything other than what they should have done under the circumstances. Since the evidence fails to establish that the Hospital was negligent, its motion for directed verdict was properly allowed. We need not consider whether the Hospital's alleged negligence was the proximate cause of plaintiffs' injury. Plaintiffs' contention is without merit.

b.

[12]   Finally, plaintiffs contend that the trial court erred in denying their motion for a new trial. We disagree.

Under North Carolina law, a motion for a new trial is addressed to the sound discretion of the trial judge who may order a new trial whenever, in his opinion, the verdict rendered is contrary to the weight of the evidence. *Britt v. Allen*, 291 N.C. 630, 231 S.E. 2d 607 (1977); *Glen Forest Corp. v. Bensch*, 9 N.C. App. 587, 176 S.E. 2d 851 (1970). "[A]n appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E. 2d 599, 602 (1982).

While there is evidence from which the jury could have concluded that Kreitz or Dr. Averett or both were negligent in their treatment of Mr. Paris, there is also evidence tending to show that they were not negligent. Which evidence to believe was properly the province of the jury. We find no abuse of discretion in the trial court's denial of plaintiffs' motion for a new trial.

For all of the foregoing reasons, we hold that plaintiffs were afforded a fair trial, free from prejudicial error.

No error.

Judges WHICHARD and JOHNSON concur.