KEITH DANIELS, Administrator of the Estate of LORREN ALAINE DANIELS, TONYA KOONCE-DANIELS, and KEITH DANIELS, Individually, Plaintiffs v. DURHAM COUNTY HOSPITAL CORPORATION d/b/a DURHAM REGIONAL HOSPITAL; DOE CORPORATIONS ONE THROUGH FIVE; and DOE INDIVIDUALS ONE THROUGH FIVE, Defendants

No. COA04-338

(Filed 19 July 2005)

**1. Hospitals and Other Medical Facilities— nurses' failure to oppose doctor's decision—summary judgment**

A nurse may not be liable for obeying a doctor's order unless the order was so obviously negligent that any reasonable person would anticipate substantial injury to the patient. Summary judgment was correctly granted for the hospital here on a claim based on nurses' failure to oppose the doctor's decision to conduct a mid-forceps delivery.

**2. Hospitals and Other Medical Facilities— duty to inform patient—nurses**

Any duty to obtain informed consent was born by a private physician performing a mid-forceps delivery rather than the nurses and summary judgment was correctly granted for the hospital. Moreover, plaintiffs did not offer evidence that the hospital required its nurses to obtain the signed consent of the hospital's patients.

**3. Hospitals and Other Facilities— failure to have policy—no evidence of contents of policy—summary judgment**

Summary judgment was correctly granted for a hospital on the issue of whether it should have been liable for not having a policy on mid-forceps deliveries where there was no evidence of the contents of any such policy.

Judge TYSON concurring.

Appeal by plaintiffs from judgment entered 17 October 2002 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 16 February 2005.

*Burford & Lewis, PLLC, by Robert J. Burford and James W. Vaughan, for plaintiffs-appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Timothy P. Lehan, Christopher G. Smith, and Kelly L. Podger, for defendant-appellee.*

GEER, Judge.

Plaintiffs Keith Daniels and his wife Tonya Koonce-Daniels brought suit against defendant Durham County Hospital Corporation ("the Hospital") for the death of their baby, Lorren Alaine Daniels, due to injuries they contend were sustained during her delivery. Plaintiffs have appealed from the trial court's order granting the Hospital summary judgment, arguing that the Hospital is liable based on (1) its nurses' failure to oppose the delivering doctor's decision to perform a mid-forceps delivery, (2) the nurses' failure to obtain plaintiffs' informed consent, and (3) the Hospital's failure to adopt a policy governing mid-forceps deliveries. We affirm the trial court's grant of summary judgment in favor of defendant.

## Facts

On 1 September 1995, Ms. Koonce-Daniels was admitted to the Hospital by her private physician, Dr. James Dingfelder, for induction of labor due to her elevated blood pressure. At approximately 7:30 a.m. on 2 September 1995, Nurse Clara Butler Sharpe, an employee of the Hospital, came on duty as Ms. Koonce-Daniels' primary labor and delivery nurse. Nurse Sharpe had worked with Dr. Dingfelder for 18 to 19 years.

At 10:30 a.m., Ms. Koonce-Daniels received an epidural to address her labor pains. Her labor continued through the afternoon without any signs of fetal distress or maternal compromise. At 3:55 p.m., Ms. Koonce-Daniels was in the second stage of labor, the point at which she would normally push the baby down further into the birth canal to complete a normal vaginal delivery. Nurse Sharpe assessed Ms. Koonce-Daniels at this time and noted that her vital signs were "stable" and that the baby's heart rate was "normal." Dr. Dingfelder, however, performed a vaginal examination of Ms. Koonce-Daniels

and determined that the baby was in an "occiput posterior" position, looking up at her mother's stomach, rather than in the normal position, looking down towards her mother's back.

Dr. Dingfelder made the decision to perform a forceps delivery rather than to allow Ms. Koonce-Daniels to begin pushing and attempt a normal vaginal delivery. At this point, the baby was at a "plus-two" station in the birth canal. In other words, she had not yet proceeded far enough along in the birth canal for her head to be visible during contractions. A forceps delivery performed upon such a baby is known as a "mid-forceps" delivery. At 4:04 p.m., Dr. Dingfelder used forceps to rotate the baby 180 degrees to the proper anterior position and then to deliver the baby. He was assisted in the delivery by Nurse Sharpe and Nurse Kay Parker (also an employee of the Hospital).

When Lorren was delivered at 4:18 p.m., she was unresponsive, blue in color, and not breathing. Subsequent examination revealed that she had been born with a cervical spine injury. She was paralyzed from the neck down and unable to breathe on her own. Lorren died from this spinal injury on 11 April 1996.

In 1997, plaintiffs filed suit against Dr. Dingfelder and the Hospital and its agents, alleging joint and several liability for negligence and medical malpractice arising out of Lorren's spinal injury and death. Plaintiffs voluntarily dismissed their claims against the Hospital in 1998 and later entered into a settlement agreement with Dr. Dingfelder. On 19 February 1999, plaintiffs re-filed their claims against the Hospital, asserting causes of action for negligence and negligent infliction of severe emotional distress.

After filing an answer and after completion of discovery, the Hospital moved for summary judgment. In response, plaintiffs contended that the Hospital was liable based on *respondeat superior* (1) for its nurses' failure to oppose the doctor's decision to perform a mid-forceps delivery by either refusing to assist in the procedure or by invoking the hospital chain of command policy and (2) for its nurses' failure to obtain informed consent from plaintiffs. Plaintiffs further contended that the Hospital was directly negligent in failing to adopt a policy governing the performance of mid-forceps deliveries. Following a hearing, Judge Orlando Hudson entered summary judgment in favor of the Hospital. Plaintiffs filed a timely appeal of that order.

DANIELS v. DURHAM CTY. HOSP. CORP.

[171 N.C. App. 535 (2005)]

## Standard of Review

"It is well established that the standard of review of the grant of a motion for summary judgment requires a two-part analysis of whether, (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law." *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (internal quotation marks omitted), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001). The moving party has the burden of establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party. *Id.* We review the trial court's grant of summary judgment *de novo*. *Shroyer v. County of Mecklenburg*, 154 N.C. App. 163, 167, 571 S.E.2d 849, 851 (2002).

## The Nurses' Failure to Oppose the Doctor's Decision

[1] With respect to plaintiffs' claim regarding the nurses' failure to oppose the doctor's decision to deliver plaintiffs' baby by way of a mid-forceps delivery, defendants initially contend that the record contains insufficient evidence of proximate cause. We need not, however, address that issue because we agree with defendant's alternative contention that plaintiffs' evidence is not sufficient to meet the standard set forth in *Byrd v. Marion Gen. Hosp.*, 202 N.C. 337, 162 S.E. 738 (1932).

Under *Byrd*, a nurse may not be held liable for obeying a doctor's order unless "such order was so obviously negligent as to lead any reasonable person to anticipate that substantial injury would result to the patient from the execution of such order or performance of such direction." *Id.* at 341, 162 S.E. at 740. The Court stressed that "[t]he law contemplates that the physician *is solely responsible* for the diagnosis and treatment of his patient. Nurses are not supposed to be experts in the technique of diagnosis or the mechanics of treatment." *Id.* at 341-42, 162 S.E. at 740 (emphasis added).

Although these principles were set out more than 70 years ago, they remain the controlling law in North Carolina. *Blanton v. Moses*

*H. Cone Mem'l Hosp., Inc.*, 319 N.C. 372, 376, 354 S.E.2d 455, 458 (1987). Plaintiffs refer repeatedly to the responsibilities of the "delivery team" and argue for a collaborative process with joint responsibility. While medical practices, standards, and expectations have certainly changed since 1932 and even since 1987, this Court is not free to alter the standard set forth in *Byrd* and *Blanton*.

In applying *Byrd*, this Court has stated: "While a nurse may disobey the instructions of a physician where those instructions are obviously wrong and will result in harm to the patient, the duty to disobey does not extend to situations where there is a difference of medical opinion." *Paris v. Michael Kreitz, Jr., P.A.*, 75 N.C. App. 365, 380, 331 S.E.2d 234, 245 (internal citations omitted), *disc. review denied*, 315 N.C. 185, 337 S.E.2d 858 (1985). In *Paris*, this Court noted that while the negligence of the doctor was a question of fact, "it is clear that the negligence was not so obvious as to require [the nurse] to disobey an instruction or refuse to administer a treatment [because] . . . [a]ny disagreement or contrary recommendation she may have had as to the treatment prescribed would have necessarily been premised on a separate diagnosis, which she was not qualified to render." *Id.* at 381, 331 S.E.2d at 245.

Here, although plaintiffs' expert witness affidavits list ten functions that nurses perform in the course of a mid-forceps delivery, plaintiffs do not contend that the defendant nurses were negligent in performing those functions. Instead, plaintiffs contend that the nurses should have challenged the doctor's decision and, if unsuccessful in changing that decision, should have "refused to participate as a part of Tonya Daniels's labor and delivery team in the non-indicated and unconsented-to mid-forceps rotation and delivery." (Emphasis omitted.)

Based on our review of plaintiffs' evidence, even if there is an issue of fact regarding the negligence of Dr. Dingfelder, that evidence does not establish that the negligence was so obvious as to require the nurses to refuse to obey the doctor. In arguing that the nurses should have challenged the doctor's order, plaintiffs discuss factual issues regarding "clinical indications," the level of the baby in the birth canal, the degree of maternal and fetal distress, and the viability and appropriateness of proceeding to stage two labor—all factors underlying a medical diagnosis and a decision regarding treatment. They argue that the nurses, in considering all of these factors, should have concluded that a mid-forceps delivery was not appropriate.

Thus, just as in *Paris*, plaintiffs present a medical dispute regarding diagnosis and treatment that nurses are not qualified to resolve. *See* N.C. Gen. Stat. § 90-171.20(7) (2003) (providing that the "practice of nursing by a registered nurse" includes "[c]ollaborating with other health care providers in determining the appropriate health care for a patient but, subject to the provisions of G.S. 90-18.2 [governing nurse practitioners], not prescribing a medical treatment regimen or making a medical diagnosis, except under supervision of a licensed physician"). As a result, under *Byrd*, *Blanton*, and *Paris*, plaintiffs' evidence fails to establish a breach of duty by the nurses and accordingly—because the claim against the Hospital was based on *respondeat superior*—the trial court properly granted summary judgment to the Hospital on this claim.

### Informed Consent

[2] In addition, plaintiffs contend that the nurses and the Hospital breached a duty to obtain proper informed consent from plaintiffs even though Ms. Koonce-Daniels' delivery was performed by her private physician. This Court is, however, bound by *Cox v. Haworth*, 54 N.C. App. 328, 283 S.E.2d 392 (1981). In *Cox*, this Court wrote:

> This Court has held that if circumstances warrant, a physician has a duty to warn a patient of consequences of a medical procedure. The physician in this case was [plaintiff's] own privately retained physician. Any duty to inform [plaintiff] of the risks of the procedures would have been on the privately retained physician, not on the Hospital or its personnel. Consequently, we find that the Hospital had no duty to inform [plaintiff] of the risks and procedures to be used . . . or to secure his informed consent when [plaintiff] hired his private physician to perform the [procedures]. . . . Since we find no duty on the part of the Hospital to advise [plaintiff] of the risk involved in the [procedure] and no duty to obtain his consent, [plaintiff] could not recover under the facts of this case, and summary judgment was properly granted.

*Id.* at 332-33, 283 S.E.2d at 395-96 (internal citations omitted).

The only contrary authority cited by plaintiffs is *Campbell v. Pitt County Mem'l Hosp., Inc.*, 84 N.C. App. 314, 352 S.E.2d 902 (1987). In *Campbell*, two judges agreed, based on the evidence presented, that the hospital could be held liable for failing to obtain informed consent. Following an appeal based on the dissent on that issue, the North Carolina Supreme Court was evenly divided and accordingly

affirmed the *Campbell* opinion, but stripped it of precedential value. *Campbell v. Pitt County Mem'l Hosp., Inc.,* 321 N.C. 260, 265-66, 362 S.E.2d 273, 276 (1987).

In any event, plaintiffs' showing in this case does not rise to the level found sufficient in *Campbell.* The concurring opinion in *Campbell* clarified that the question before the panel was "whether a court should instruct a jury regarding a duty which, the evidence shows, the hospital had imposed on itself." *Campbell,* 84 N.C. App. at 330, 352 S.E.2d at 911 (Becton, J., concurring). The concurrence stressed: "Judicial enforcement of a duty that a hospital imposes upon itself is significantly different than judicial imposition of a new duty on a hospital." *Id.* The Court determined the following evidence to be sufficient to establish that the hospital had assumed a duty of obtaining informed consent: (1) expert testimony regarding a nurse's duty to ensure that a patient is fully informed, and (2) evidence that the "hospital had a policy requiring labor and delivery room nurses to obtain the signature of patients on a hospital consent form before delivery." *Id.*

While plaintiffs in this case presented expert testimony regarding the nurses' duty, the record contains only two pertinent policies of the hospital, including (1) a statement of patient's rights providing that a patient has the right to obtain "[a]s much information about any proposed treatment or procedure as [the patient] may need in order to make a decision" and has a right to "[a]ctive participation in decisions regarding medical care;" and (2) a "Standard Care Statement: Labor Management" that with respect to "Patient Education" provides that "[a]ll procedures are explained and documentation noted." In contrast to *Campbell,* plaintiffs in this case did not offer any evidence that the hospital required its nurses to obtain the signed consent of the hospital's patients.[1]

Subsequently to *Campbell,* this Court reiterated the holding in *Cox* after noting *Campbell's* lack of precedential value: "[W]e have expressly declined to . . . impose upon a hospital the duty to obtain a patient's informed consent before treatment when, as here, the patient is admitted by a private physician for surgery." *Clark v. Perry,*

---

1. Plaintiffs also refer to excerpts from the Joint Commission on the Accreditation of Hospitals ("JCAH") standards applicable to the Hospital. Our Supreme Court has held that evidence a hospital failed to follow JCAH safety standards is "some evidence of negligence." *Blanton,* 319 N.C. at 376, 354 S.E.2d at 458. Nothing, however, in the provided excerpts purports to place a duty on nurses, in addition to the private physician, to obtain informed consent.

114 N.C. App. 297, 315, 442 S.E.2d 57, 67 (1994). We are not free to disregard *Cox* and *Clark*. Any change must be accomplished by the Supreme Court or the General Assembly. The trial court, therefore, properly granted summary judgment on the informed consent claim.

### Hospital Policy on Forceps Deliveries

[3] Finally, plaintiffs contend that the Hospital may be held directly liable because of its failure to have a policy in place regarding mid-forceps deliveries. *See Bost v. Riley*, 44 N.C. App. 638, 647, 262 S.E.2d 391, 396 (a hospital may be found negligent for its failure to promulgate adequate rules or policies), *disc. review denied*, 300 N.C. 194, 269 S.E.2d 621 (1980). Plaintiffs offered expert testimony that the hospital should have had such a policy, but that witness declined to express any opinion as to what a proper policy would say. Plaintiffs offered no other evidence as to the appropriate contents of a policy governing mid-forceps deliveries.

In the present case, assuming *arguendo* that the defendant Hospital did breach a duty by failing to have proper policies in place, plaintiffs would have had to present evidence that such a breach was a "contributing factor" to the baby's injuries and ultimate death. *Id.* at 648, 262 S.E.2d at 397 ("Where a hospital's breach of duty is not a contributing factor to the patient's injuries, the hospital may not be held liable."). Without, however, evidence of what a proper policy would have stated, it is impossible to determine whether such a policy would have precluded the delivery in this case and thus whether the lack of a policy was a contributing factor to the baby's injuries.

Because of the lack of evidence as to the contents of any required policy, the trial court properly granted summary judgment as to this claim as well. *Compare Reed v. Granbury Hosp. Corp.*, 117 S.W.3d 404, 411-13 (Tex. App.—Fort Worth 2003) (holding that the trial court properly granted summary judgment on a claim that a hospital negligently failed to have a protocol on the administration of a particular drug to stroke patients when the expert witnesses demonstrated a complete lack of knowledge regarding the specifics of any other hospitals' protocols concerning administration of that drug) *with Edwards v. Brandywine Hosp.*, 438 Pa. Super. 673, 684-85, 652 A.2d 1382, 1387-88 (1995) (holding that the trial court erred in directing a verdict on the plaintiff's claim that the hospital's policies regarding moving catheters were inadequate when the plaintiff "introduced evi-

dence that a 48-hour rule was appropriate, but the hospital had adopted a different rule allowing catheters to be left in place for as long as 72 hours").[2]

## Conclusion

In sum, we hold that the trial court properly entered summary judgment for the Hospital based on (1) the lack of evidence to meet the *Byrd* and *Blanton* standards; (2) the lack of a duty under *Cox* and *Clark* for a hospital or its nurses to obtain the informed consent of a patient receiving care from a private physician; and (3) the lack of evidence as to the contents of the policy that plaintiffs contend the hospital negligently failed to adopt.

Affirmed.

Judge HUNTER concurs.

Judge TYSON concurs in separate opinion.

TYSON, Judge concurring.

I concur in the decision to affirm the trial court's judgment. I write separately to further address the issues presented.

## I. Background

In addition to those facts set out in majority's opinion, it is important to note: (1) Daniels accompanied his wife to the Hospital and remained present with her at all times; (2) at the time of delivery in September 1995, Nurse Sharpe, was licensed as a registered nurse for more than twenty years and had worked with Dr. Dingfelder for eighteen to nineteen years; (3) around 7:30 a.m. on 2 September 1995, Nurse Sharpe was also assigned as nurse to Mrs. Daniels; and (4) Nurse Parker had been a practicing nurse for nineteen years.

---

2. Plaintiffs have also contended that the trial court erred in considering the affidavits and depositions of Drs. Dingfelder and Fried that were submitted by the Hospital in support of its motion for summary judgment because both doctors were interested in the outcome of this case. *See State Farm Life Ins. Co. v. Allison,* 128 N.C. App. 74, 77, 493 S.E.2d 329, 330 (1997), *disc. review denied,* 347 N.C. 584, 502 S.E.2d 616 (1998). We need not, however, address these arguments since our opinion affirming summary judgment in favor of defendants does not rely on the content of those affidavits and depositions.

**DANIELS v. DURHAM CTY. HOSP. CORP.**

[171 N.C. App. 535 (2005)]

## II.  Issue

Plaintiffs assert the trial court erred by awarding summary judgment to the Hospital based on finding and concluding as a matter of law that no act or failure to act by the Hospital or its agents proximately caused or contributed to the injury and death of Lorren.

### III.  Summary Judgment

### A.  Standard of Review

A portion of our standard of review is set out in the majority's opinion: summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003).

In addition to that portion of our standard of review previously stated, we have also held:

> The moving party has the burden of establishing the lack of any triable issue of fact. A defendant may show entitlement to summary judgment by[:] (1) proving that an essential element of the plaintiff's case is non-existent[;] or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim[;] or (3) showing that the plaintiff cannot surmount an affirmative defense . . . . *Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial.*

*Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 345 (2003), *aff'd per curiam*, 358 N.C. 137, 591 S.E.2d 520 (2004) (internal quotations and citations omitted) (emphasis supplied).

In order to survive a motion for summary judgment in a negligence action, the plaintiff must show: "(1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances." *Strickland v. Doe*, 156 N.C. App. 292, 294, 577 S.E.2d 124, 128 (2003), *disc. rev. denied*, 357 N.C. 169, 581 S.E.2d 447 (quoting *Lavelle v.*

**DANIELS v. DURHAM CTY. HOSP. CORP.**

[171 N.C. App. 535 (2005)]

*Schultz,* 120 N.C. App. 857, 859-60, 463 S.E.2d 567, 569 (1995), *disc. rev. denied,* 342 N.C. 656, 467 S.E.2d 715 (1996)).

### IV. Nurses' Duties to a Patient

Plaintiffs argue that Nurse Sharpe and Nurse Parker were negligent by following Dr. Dingfelder's instructions. In *Byrd v. Hospital,* and as more recently followed in *Blanton v. Moses H. Cone Hosp.,* our Supreme Court stated:

> nurses, in the discharge of their duties, must obey and diligently execute the orders of the physician or surgeon in charge of the patient, unless, of course, such order was so obviously negligent as to lead any reasonable person to anticipate that substantial injury would result to the patient from the execution of such order or performance of such direction. Certainly, if a physician or surgeon should order a nurse to stick fire to a patient, no nurse would be protected from liability for damages for undertaking to carry out the orders of the physician. *The law contemplates that the physician is solely responsible for the diagnosis and treatment of his patient. Nurses are not supposed to be experts in the technique of diagnosis or the mechanics of treatment.*

*Byrd v. Hospital,* 202 N.C. 337, 341-42, 162 S.E. 738, 740 (1932) (emphasis supplied), *followed by Blanton v. Moses H. Cone Hosp.,* 319 N.C. 372, 354 S.E.2d 455 (1987); *see also Paris v. Kreitz,* 75 N.C. App. 365, 381, 331 S.E.2d 234, 245 (1985) ("it is clear that the negligence was not so obvious as to require [the nurse] to disobey an instruction or refuse to administer a treatment [because] . . . [a]ny disagreement or contrary recommendation she may have had as to the treatment prescribed would have necessarily been premised on a separate diagnosis, which she was not qualified to render." (citing *Byrd,* 202 N.C. at 337, 162 S.E. at 738).

In *Byrd,* our Supreme Court also recognized:

> If the injury resulted from a peculiar condition of plaintiff's body, producing unusual or abnormal susceptibility to [the treatment], then this was a matter of diagnosis and lay exclusively within the duty of the physician, unless, of course, as hereinbefore indicated, the type of disease was so pronounced and so well known as to lead the nurse in the exercise of ordinary care to anticipate injury.

202 N.C. at 342-43, 162 S.E. at 741.

In *Byrd*, as here, "there was nothing to indicate to the nurse[s] that the [procedure to] plaintiff with the acquiescence and implied approval of the physician was obviously dangerous or likely to produce harm." 202 N.C. at 343, 162 S.E. at 741. Testimony in the depositions before the trial court on summary judgment show forceps deliveries are "common." Nurse Parker testified that she expected the procedure to be a "regular routine forcep[s] delivery for a first-time mom." Plaintiffs present no forecast of evidence to show the forceps procedure chosen by Dr. Dingfelder was "obviously dangerous" or "likely to produce harm." *Id.* at 342-43, 162 S.E. at 741.

The trial court did not err by concluding that plaintiffs failed to show as a matter of law the nurses or the Hospital could have reasonably "anticipate[d] injury" or death to Lorren. *Id.*

## V. Act or Failure to Act

Plaintiffs contend the trial court erred by concluding they failed to show the actions or inactions of the Hospital or its agents contributed to or proximately caused Lorren's injuries based on the affidavits of Drs. Dingfelder and Fried.

### A. *Respondeat Superior*

Plaintiffs argue "[t]he affidavits of Dr. Dingfelder and of Dr. Fried do not address all of the negligent acts of the hospital and its agents." In support of this argument, plaintiffs assert the Hospital is jointly liable for the negligence of the labor and delivery team under the theory of *respondeat superior*.

"If an employee is negligent while acting in the course of employment and such negligence is the proximate cause of injury to another, the employer is liable in damages under the doctrine of *respondeat superior* . . . ." *Johnson v. Lamb*, 273 N.C. 701, 707, 161 S.E.2d 131, 137 (1968) (citing *Gillis v. Tea Co.*, 223 N.C. 470, 27 S.E.2d 283 (1943); *West v. Woolworth Co.*, 215 N.C. 211, 15 S.E.2d 546 (1939)). Beyond their broad assertion, plaintiffs neither presented nor forecasted any evidence to show: (1) that any of the Hospital's employees were negligent; or (2) that even if one of the Hospital's employees was negligent, that such negligence contributed to or was the proximate cause of Lorren's death. *Johnson*, 273 N.C. at 707, 161 S.E.2d at 137.

"Plaintiff [as the nonmoving party] is required to offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, and upon failure to do so,

[summary judgment] is proper." *Young v. Fun Services-Carolina, Inc.*, 122 N.C. App. 157, 162, 468 S.E.2d 260, 263, *disc. rev. denied*, 344 N.C. 444, 476 S.E.2d 134 (1996) (alterations in original) (quoting *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 68, 414 S.E.2d 339, 345 (1992)). Without evidence to show the Hospital's employees were negligent or that such negligence was the proximate cause of Lorren's death, the trial court did not err in awarding summary judgment to the Hospital on plaintiffs' claims for negligence or liability under the theory of *respondeat superior*.

### B. Informed Consent

Next, plaintiffs contend the Hospital negligently failed to ensure that Mrs. Daniels gave informed consent to the forceps procedure. Plaintiffs argue the lack of testimony in Drs. Dingfelder's and Fried's depositions raise genuine issues of material fact regarding Mrs. Daniels' informed consent.

Our Supreme Court "has long recognized that hospitals owe a duty of care to their patients. They must exercise ordinary care in the selection of their agents. They must make a reasonable effort to monitor and oversee the treatment their staffs provide to patients." *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 138, 472 S.E.2d 778, 781 (1996) (citations omitted). *Horton*, which extended the continuing course of treatment doctrine to hospitals, is instructive, but not controlling to the case at bar. 344 N.C. at 139, 472 S.E.2d at 782.

Here, plaintiffs do not contend the Hospital's actions were unreasonable but argue the Hospital and its employees were negligent in failing to obtain Mrs. Daniels' informed consent to the forceps procedure. Addressing an issue similar to that at bar, this Court stated:

We are urged to . . . impose a duty upon a hospital to properly inform and advise a patient of the nature of a medical procedure to be performed on him when the patient is admitted to the hospital for an operation under the care of his privately retained physician. We decline to do so.

*Cox v. Haworth*, 54 N.C. App. 328, 331, 283 S.E.2d 392, 394-95 (1981).

Plaintiffs contend *Sharpe v. Pugh*, 270 N.C. 598, 155 S.E.2d 108 (1967), establishes a duty on the Hospital to obtain informed consent. *Sharpe* involved an action only against the treating physician and did not identify or join a hospital as party to that action nor did the Supreme Court set forth any discussion regarding a hospital's liabil-

ity. The reasoning in *Sharpe* is distinguishable and not controlling to the facts here.

In *Campbell v. Pitt County Memorial Hosp.*, this Court stated in a split decision:

> defendant, under the doctrine of corporate negligence set forth in *Bost v. Riley*, 44 N.C. App. 638, 262 S.E.2d 391, *disc. rev. denied*, 300 N.C. 194, 269 S.E.2d 621 (1980) as applied to the specific facts and circumstances of this case, did have a legal duty to insure that plaintiffs' informed consent to a vaginal delivery of a footling breech baby had been obtained prior to delivery.

84 N.C. App. 314, 322, 352 S.E.2d 902, 907 (1987), *aff'd*, 321 N.C. 260, 362 S.E.2d 273, *overruled on other grounds*, *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85 (1990). Judge Becton, the authoring judge in *Cox*, distinguished the facts in *Campbell* from those in *Cox* in his concurring in part, dissenting in part opinion and explained, "In *Cox* we were asked to determine if a court could impose such a duty on a hospital. In the case *sub judice*, we are asked to determine whether a court should instruct a jury regarding a duty which, the evidence shows, the hospital *had imposed on itself*." *Campbell*, 84 N.C. App. at 330, 352 S.E.2d at 911 (J. Becton concurring in part, dissenting in part) (emphasis supplied).

Upon appeal of right based on the dissenting opinion, the Supreme Court was equally divided in *Campbell* and ruled, "[t]he decision of the Court of Appeals on this issue is thus left undisturbed and stands without precedential value." 321 N.C. 260, 266, 362 S.E.2d 273, 276 (1987) (citing *Forbes Homes, Inc. v. Trimpi*, 313 N.C. 168, 326 S.E.2d 30 (1985)). This Court in *Clark v. Perry* followed *Cox* and later held, "we have expressly declined to . . . impose upon a hospital the duty to obtain a patient's informed consent before treatment when, as here, the patient is admitted by a private physician for surgery." 114 N.C. App. 297, 315, 442 S.E.2d 57, 67 (1994) (citing *Cox*, 54 N.C. App. at 332-33, 283 S.E.2d at 395-96).

This appeal concerns a motion for summary judgment similar to *Cox* and not an appeal addressing jury instructions based on presentation of the evidence as the issues in *Campbell*. The dicta in *Campbell* is "without precedential value" and does not address the issue presented here. 84 N.C. App. at 330, 352 S.E.2d at 911.

Following this Court's holdings in *Cox* and *Clark*, plaintiffs forecast no basis to impose a separate duty on the Hospital to obtain

informed consent without any evidence to support or a finding to show the treating physician failed to do so. *Cox*, 54 N.C. App. at 331, 283 S.E.2d at 394-95; *Clark*, 114 N.C. App. at 315, 442 S.E.2d at 67.

## C. Chain of Command

Plaintiffs also argue the Hospital should be held liable because it failed to have "an effective chain of command procedure" in place at the time of Lorren's delivery. Plaintiffs neither present nor cite to any authority to support this argument. N.C.R. App. P. 28(b)(6) (2004) ("Assignments of error . . . in support of which no . . . authority [is] cited, will be taken as abandoned.):

Additionally, plaintiffs argue the Hospital "made no showing before the trial court as to why these negligent failures on its part were not proximate causes of" Lorren's death. This argument is misplaced. Plaintiffs, not the Hospital, carry the burden of "establish[ing] beyond mere speculation or conjecture every essential element of negligence," including the element of proximate cause. *Young*, 122 N.C. App. at 162, 468 S.E.2d at 263 (quoting *Roumillat*, 331 N.C. at 68, 414 S.E.2d at 345). Without a forecast of evidence to support this element, plaintiffs cannot shift their burden to. defendants. Summary judgment for the Hospital on this issue is proper. *Id.*

## D. Interested Parties

Finally, plaintiffs contend the trial court erred in considering the affidavits and depositions of Drs. Dingfelder and Fried presented by the Hospital in support of its motion for summary judgment. Plaintiffs argue that Drs. Dingfelder's and Fried's testimony were biased because they both were "employed" by the Hospital at the time of the alleged negligent acts and have a personal stake in the outcome. Their argument asserts both doctors were "interested in the outcome of the case" which requires a jury, not the trial court, to act as the fact finder to resolve questions regarding credibility. *State Farm Life Ins. Co. v. Allison*, 128 N.C. App. 74, 77, 493 S.E.2d 329, 330 (1997), *disc. rev. denied*, 347 N.C. 584, 502 S.E.2d 616 (1998).

Plaintiffs fail to identify any specific testimony by the doctors or any other evidence considered by the trial court to support their argument. Plaintiffs also fail to forecast any evidence to contradict the doctors' testimony. Without a forecast of disputed testimony or evidence to create a genuine issue of material fact, consideration and resolution of any credibility issues of an alleged interested witness

does not deprive the trial court of its ability to rule on a motion for summary judgment. *Id.*

## VI. Conclusion

Although the facts at bar are tragic, plaintiffs settled and dismissed their claims with prejudice against the treating physician, Dr. Dingfelder, without any admission or finding of liability by him. In asserting claims against the Hospital and its nurses, plaintiffs have failed to forecast evidence to show a separate duty imposed on the nurses' or the Hospital's alleged negligence proximately caused Lorren's injuries.

Plaintiffs also failed to show the trial court erred by considering the affidavits of Drs. Dingfelder and Fried. Although the majority's opinion rests on plaintiffs' failure to establish any genuine issue of material fact of defendants owing a duty or breach of that duty, the trial court alternatively did not err by concluding that plaintiffs failed as a matter of law to "produce a forecast" to show that the Hospital's or its agents' acts, or failure to act, contributed to and proximately caused Lorren's injury or death. *Draughon*, 158 N.C. App. at 708, 582 S.E.2d at 345 (quoting *Gaunt v. Pittaway*, 13 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000)).

Having carefully reviewed the record and evidence before the trial court on the Hospital's motion for summary judgment, as well as plaintiffs' briefs and oral arguments on appeal, I concur to affirm the trial court's judgment.