DIETZ, Judge.
 

 *45
 
 Plaintiff Jerry Davis injured his ankle at work and struggled with pain for many years. In 2014, his doctors prescribed a compound cream that Davis found more effective than previous treatments. This compound cream was not approved by the U.S. Food and Drug Administration.
 

 *46
 
 Defendants, who are Davis's workers' compensation providers, refused to compensate him for this non-FDA-approved treatment. The Industrial Commission concluded that the compound cream was reasonably required to provide relief and ordered Defendants to pay. Defendants appealed.
 

 As explained below, we reject Defendants' argument that non-FDA-approved drugs should be categorically excluded from medical compensation under the workers' compensation system. The text of the Workers' Compensation Act does not limit drug treatment solely to FDA-approved drugs. Defendants assert a number of persuasive policy arguments concerning the risks of non-FDA-approved drugs, but this Court has no authority to rewrite the law on policy grounds. That is a task for the legislative branch.
 

 We likewise reject Defendants' argument that the compound cream is not reasonably required to provide relief in this case because its risks outweigh the marginal pain relief Davis experienced. This is a fact question for the Commission. There is at least some competent evidence supporting the Commission's findings and they are therefore binding on this Court. Accordingly, we affirm the Commission's opinion and award.
 

 *604
 

 Facts and Procedural History
 

 Plaintiff Jerry Davis began working for the Craven County ABC Board in 2009. In May 2010, Davis injured his right ankle while at work and began receiving workers' compensation.
 

 In 2011, Davis was treated by Dr. Marcono Hines at Nova Pain Management. Dr. Hines prescribed Davis Voltaren gel, an FDA-approved drug. In 2014, Defendants sent Davis to Dr. Garlon Campbell, a pain management physician at The Carolinas Center for Surgery. On 4 June 2014, Dr. Campbell conducted a physical examination of Davis and noted that Davis's symptoms were consistent with complex regional pain syndrome or reflex sympathetic dystrophy.
 

 Dr. Campbell prescribed Davis a compound cream to treat his condition. That compound cream was not approved by the FDA, the federal agency that regulates prescription drugs. However, the drugs that are "compounded" together to create the cream each are FDA-approved on their own for the treatment of various medical conditions.
 

 At a follow-up visit, Davis told Dr. Campbell that the compound cream relieved some of his symptoms. Dr. Campbell recommended continued use of the compound cream for three months. Defendants
 
 *47
 
 refused to pay for this non-FDA-approved drug treatment and refused to authorize any further treatment by Dr. Campbell.
 

 Davis continued to be treated by Dr. Hines and, after Davis reported his experience with the compound cream, Dr. Hines prescribed a similar, non-FDA-approved compound cream to treat Davis's pain. Defendants again refused to authorize or pay for this prescription.
 

 On 7 July 2015, Davis moved to compel Defendants to pay for the compound cream. In his deposition, Dr. Hines testified that Davis experienced more pain relief when using the compound cream than when using Voltaren gel. Dr. Hines opined that the compound cream was reasonably necessary to provide Davis with pain relief.
 

 On cross-examination, Dr. Hines acknowledged that the compound cream was not FDA-approved and that many health insurers refuse to approve the compound cream for treatment. When asked who would bear the risk if something happened to a patient while using a non-FDA-approved medicine, Dr. Hines stated he was no longer comfortable prescribing compound creams and would not do so for other patients. But because Davis had a successful experience with the compound cream, Dr. Hines testified he would still prescribe the compound cream for Davis with the understanding that if Davis experienced any problems, he would immediately cease its use.
 

 Dr. Campbell also testified. He explained that he often prescribes compound cream and has experience with patients who have used the cream long-term. While Dr. Campbell has noticed skin irritation in connection with the cream, he has never seen a toxic reaction. Dr. Campbell stated the compound cream is "very safe," even though the combination of drugs is not FDA-approved. Dr. Campbell opined that the compound cream was reasonably necessary to relieve Davis's pain. Dr. Campbell also testified that he would prescribe the compound cream to others and was unaware of any toxicity or death with patients who used the compound cream.
 

 On 26 October 2016, a deputy commissioner concluded that the compound cream was reasonably necessary to effect a cure, provide relief, or lessen Davis's period of disability. The deputy commissioner ordered Defendants to authorize and pay for the compound cream. Defendants appealed to the Full Commission. The Full Commission affirmed the deputy commissioner and again ordered Defendants to authorize and pay for the compound cream. Defendants timely appealed.
 

 *48
 

 Analysis
 

 Defendants oppose the Commission's opinion and award on two grounds and we address them in turn below.
 

 First, Defendants argue that they should not be required to authorize and pay for treatment using a non-FDA-approved drug. Defendants assert that "medical compensation" under the Workers' Compensation Act only applies to medical care that "may
 
 reasonably
 
 be required to effect a cure or give relief."
 
 N.C. Gen. Stat. § 97-2
 
 (19) (emphasis added). Defendants point to a number of persuasive policy reasons why non-FDA-approved drugs are dangerous. Given these
 
 *605
 
 health risks, Defendants argue, non-FDA-approved drugs cannot be reasonably required for medical care under any circumstances.
 

 We reject this argument. The text of the Workers' Compensation Act does not limit the types of drugs that might reasonably be required solely to those that are FDA-approved. Instead, the statute indicates that whether a particular medical treatment "may reasonably be required to effect a cure or give relief" is a fact question that must be individually assessed in each case. Were this Court to create a categorical exclusion for non-FDA-approved medical treatments, we would, in effect, be adding an exception to the Act where one does not exist in the text. We cannot do so. This Court is "an error-correcting body, not a policy-making or law-making one."
 
 Times News Publ'g Co. v. Alamance-Burlington Bd. of Educ
 
 .,
 
 242 N.C. App. 375
 
 , 381,
 
 774 S.E.2d 922
 
 , 927 (2015). We have no authority to create exceptions to the plain text of statutes on policy grounds. If requiring workers' compensation providers to compensate injured workers for non-FDA-approved drugs is bad policy, it is for our General Assembly to change that law. Accordingly, we reject Defendants' argument that non-FDA-approved drugs categorically fall outside the statutory definition of "medical compensation" because they are never reasonably required to effect a cure or provide relief.
 
 See
 

 N.C. Gen. Stat. §§ 97-2
 
 (19), 97-25.
 

 Next, Defendants argue that this Court should "weigh the minimal relief that Plaintiff subjectively reports as receiving from the cream versus the risks associated with injured workers using non-FDA-approved drugs" and conclude that the compound cream in this case is not "reasonably required" to give relief under
 
 N.C. Gen. Stat. § 97-2
 
 (19). We again reject this argument.
 

 As explained above, whether a particular drug is reasonably required is a fact question. This Court does not engage in
 
 de novo
 
 review of facts in workers' compensation cases. Instead, we apply the competent
 
 *49
 
 evidence standard. Under that standard of review, if the Commission's factual findings are supported by
 
 any
 
 competent evidence in the record, those findings are binding on appeal.
 
 Adams v. Frit Car, Inc
 
 .,
 
 185 N.C. App. 714
 
 , 717,
 
 649 S.E.2d 651
 
 , 653 (2007).
 

 Here, there was at least some competent evidence supporting the Commission's finding that "the compound cream recommended and prescribed by both Dr. Campbell and Dr. Hines is reasonably required to effect a cure, provide relief, or lessen Plaintiff's period of disability." Davis testified that the compound cream provided several hours of pain relief, which was significantly better than other pain management treatments his doctors had prescribed. The cream also permitted him to stand and walk more freely than other treatments.
 

 Dr. Campbell and Dr. Hines, two physicians who treated Davis, testified that the compound cream provided relief from Davis's pain that was more effective than other available treatments. Both physicians also testified that Davis reported no significant adverse effects from the compound cream and that they were not aware of any other patients who suffered adverse side effects when using the compound creams. Both physicians therefore concluded that the compound cream was reasonably required to afford relief, even if the cream was not FDA-approved.
 

 To be sure, Defendants point to other evidence in the record indicating that the risks of these compound creams outweigh the marginal pain relief Davis experienced. But this Court, applying the competent evidence standard, cannot override the Commission's fact-finding simply because evidence supports the opposite finding. There is at least some competent evidence supporting the Commission's finding and it is therefore binding on this Court. Accordingly, we reject this argument and affirm the Commission's opinion and award.
 

 Conclusion
 

 We affirm the Industrial Commission's opinion and award.
 

 AFFIRMED.
 

 Judges ELMORE and HUNTER, JR. concur.