IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-354

Filed: 16 June 2020

Mecklenburg County, No. 11 CVS 18175

EDWARD G. CONNETTE, as guardian *ad litem* for AMAYA GULLATTE, a Minor, and ANDREA HOPPER, individually and as parent of AMAYA GULLATTE, a Minor, Plaintiffs,

v.

THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY d/b/a CAROLINAS HEALTHCARE SYSTEM, and/or THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY d/b/a CAROLINAS MEDICAL CENTER, and/or THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY d/b/a LEVINE CHILDREN'S HOSPITAL, and GUS C. VANSOESTBERGEN, CRNA, Defendants.

Appeal by plaintiffs from judgment entered 20 August 2018 by Judge Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals 15 October 2019.

> *Edwards Kirby, L.L.P., by Mary Kathryn Kurth and John R. Edwards, for plaintiffs-appellants.*
>
> *Gallivan, White & Boyd, P.A., by Janice Holmes and Christopher M. Kelly, for defendants-appellees.*

DIETZ, Judge.

Nearly a century ago, our Supreme Court rejected the notion that nurses can be liable for medical malpractice based on their diagnosis and treatment of patients. The Court reasoned that nurses "are not supposed to be experts in the technique of diagnosis or the mechanics of treatment." *Byrd v. Marion Gen. Hosp.*, 202 N.C. 337,

162 S.E. 738, 740 (1932). Medicine is quite different today than in the early twentieth century and so, too, is the knowledge and skill of nurses in their varying fields and specializations.

Plaintiffs Edward Connette and Andrea Hopper argue that the nurse anesthetist in this case participated in the treatment plan for Hopper's young daughter to such a degree, and with such an exercise of expertise and discretion, that the nurse effectively was treating the patient and thus should be subject to legal claims for medical malpractice.

We must reject this argument. Had *Byrd* left room for evolving standards as the field of medicine changed, this may be a different case. But the *Byrd* court's holding is categorical, and it is controlling here. If this Court were free to reject Supreme Court precedent that we felt did not age well, it would destabilize our position as an intermediate appellate court. On issues where our Supreme Court already has spoken, we do not make law, we follow it.

Plaintiffs also challenge a series of discretionary decisions by the trial court during the trial. As explained below, under the limited standard of review we apply to these arguments, the trial court acted well within its sound discretion. Accordingly, we find no error in the trial court's judgment.

**Facts and Procedural History**

In the fall of 2010, Andrea Hopper took her three-year-old daughter Amaya to

an emergency room for an upper respiratory infection and an ear infection. While treating Amaya, medical professionals discovered that her heartrate was higher than normal, or "tachycardic," so they referred Amaya to a cardiologist, Dr. Nicholas B. Sliz, at a hospital affiliated with Defendant Charlotte-Mecklenburg Hospital Authority.

Dr. Sliz determined that Amaya's increased heart rate caused her heart to develop cardiomyopathy, a disease which makes it hard for the heart to pump blood to the body and enlarges the heart. Because Amaya's cardiac output was severely depressed, Dr. Sliz recommended she undergo an "ablation procedure" to fix her irregular heart rhythm. Dr. Sliz was confident that the ablation procedure would be a success and scheduled a surgery for Amaya.

Dr. James M. Doyle, an anesthesiologist, and Defendant Gus C. VanSoestbergen, a certified registered nurse anesthetist, administered Amaya's anesthesia. Doyle and VanSoestbergen decided to induce Amaya with a mask to avoid the stress that might be caused by pricking her with a needle and inducing her intravenously. The two also chose to induce her with "sevoflurane," an anesthetic that can cause one's blood pressure to drop and cardiac output to decrease.

Soon after the anesthesia team administrated the sevoflurane, Amaya went into cardiac arrest. After about thirteen minutes, Amaya's treatment team was able

to revive her, but the oxygen deprivation left her with permanent brain damage, cerebral palsy, and profound developmental delay.

In 2011, Plaintiffs filed a complaint against various medical professionals involved in Amaya's treatment. The case went to trial in 2015. The jury failed to reach a verdict on the claims against Doyle and VanSoestbergen in this first trial. Before the second trial, Doyle and his anesthesiology practice settled the claims against them. Thus, the only remaining parties in the second trial were VanSoestbergen, who is a certified registered nurse anesthetist, and the hospital that employed VanSoestbergen.

The second trial began in 2018. Plaintiffs asserted a number of negligence-based claims, including a claim that VanSoestbergen breached the applicable standard of care by agreeing, during the anesthesia planning stage, to induce Amaya with sevoflurane using the mask induction procedure. Plaintiffs asserted that certified registered nurse anesthetists are highly trained and have greater skills and treatment discretion than regular nurses. Moreover, they asserted, nurse anesthetists often use those skills to operate outside the supervision of an anesthesiologist. Plaintiffs also argued that VanSoestbergen was even more specialized than an ordinary nurse anesthetist because he belonged to the hospital's "Baby Heart Team" that focused on care for young children.

The trial court refused to admit Plaintiffs' evidence of this claim. The court

determined that this theory of liability was precluded by *Daniels v. Durham County Hosp. Corp.*, 171 N.C. App. 535, 615 S.E.2d 60 (2005), a decision that analyzed and applied the Supreme Court's holding in *Byrd v. Marion Gen. Hosp.*, 202 N.C. 337, 162 S.E. 738 (1932).

The trial court concluded that a nurse may be liable for improperly administering a drug, but not for breaching a duty of care for planning the anesthesia procedure and selecting the appropriate technique or drug protocol. Thus, the trial court excluded all expert testimony suggesting that VanSoestbergen breached a standard of care by agreeing to mask inhalation with sevoflurane. The trial court submitted Plaintiffs' other claims against VanSoestbergen to the jury. The jury found VanSoestbergen not liable for Amaya's injuries. Plaintiffs timely appealed.

## Analysis

### I.    Nurse's liability for treatment decisions

Plaintiffs first argue that the trial court erred by excluding evidence that VanSoestbergen "shared responsibility with Dr. Doyle for both planning and administering anesthesia to Amaya." Plaintiffs contend that a certified registered nurse anesthetist is "not a mere appendage of the anesthesiologist" but instead an "independent collaborator" who owes a duty of care to the patient when participating in the creation of a patient's treatment plan.

The trial court rejected this argument after concluding that it was barred by settled precedent. As explained below, this Court, too, is bound by that precedent and we therefore find no error in the trial court's ruling.

Nearly a century ago, a plaintiff sought to hold a nurse liable for decisions concerning diagnosis and treatment. *Byrd v. Marion Gen. Hosp.*, 202 N.C. 337, 162 S.E. 738, 740 (1932). Specifically, the plaintiff was suffering from convulsions and alleged that she was severely burned after the nurse placed her in a "sweat cabinet" or "sweating machine" as part of her treatment. *Id.*

Our Supreme Court declined to recognize the plaintiff's legal claim, explaining that "nurses, in the discharge of their duties, must obey and diligently execute the orders of the physician or surgeon in charge of the patient." *Id.* The Court held that the "law contemplates that the physician is solely responsible for the diagnosis and treatment of his patient. Nurses are not supposed to be experts in the technique of diagnosis or the mechanics of treatment." *Id.*

Since *Byrd*, this Court repeatedly has rejected legal theories and claims based on nurses' decisions concerning diagnosis and treatment of patients. In 1985, for example, this Court cited *Byrd* to reject a claim that a nurse owed a separate duty of care to the patient because any "disagreement or contrary recommendation she may have had as to the treatment prescribed would have necessarily been premised on a

separate diagnosis, which she was not qualified to render." *Paris v. Michael Kreitz, Jr., P.A.*, 75 N.C. App. 365, 381, 331 S.E.2d 234, 245 (1985).

Similarly, in 2005, this Court rejected a theory that a registered nurse was part of the "delivery team" in obstetrics and engaged in a "collaborative process with joint responsibility." *Daniels v. Durham County Hosp. Corp.*, 171 N.C. App. 535, 539, 615 S.E.2d 60, 63 (2005). We observed that, although "medical practices, standards, and expectations have certainly changed since 1932 and even since 1987, this Court is not free to alter the standard set forth in *Byrd.*" *Id.* We therefore affirmed summary judgment in favor of the nurse because "plaintiffs present a medical dispute regarding diagnosis and treatment that nurses are not qualified to resolve." *Id.* at 540, 615 S.E.2d at 63.

In short, as this Court repeatedly has held in the last few decades, trial courts (and this Court) remain bound by *Byrd*, despite the many changes in the field of medicine since the 1930s. Thus, the trial court properly determined that Plaintiffs' claims based on VanSoestbergen's participation in developing an anesthesia plan for Amaya are barred by Supreme Court precedent.

We acknowledge that Plaintiffs have presented many detailed policy arguments for why the time has come to depart from *Byrd*. We lack the authority to consider those arguments. We are "an error-correcting body, not a policy-making or law-making one." *Davis v. Craven County ABC Bd.*, 259 N.C. App. 45, 48, 814 S.E.2d

602, 605 (2018). And, equally important, *Byrd* is a Supreme Court opinion. We have no authority to modify *Byrd*'s comprehensive holding simply because times have changed. Only the Supreme Court can do that. *State v. Scott*, 180 N.C. App. 462, 465, 637 S.E.2d 292, 294 (2006). Thus, we decline to address Plaintiffs' policy arguments individually, but recognize that they were presented to us and thus are preserved should Plaintiffs seek further appellate review.

## II. Video evidence

Next, Plaintiffs argue that the trial court erred by permitting Defendants to show the jury an illustrative video depicting mask induction anesthesia. Plaintiffs contend that the video was inadmissible and unduly prejudicial.

Before we address Plaintiffs' specific evidentiary arguments, we must first address a framing issue concerning the illustrative nature of the exhibit. The determination of whether an exhibit is sufficiently illustrative "is a matter within the sound discretion of the trial judge." *Thomas v. Dixson*, 88 N.C. App. 337, 345, 363 S.E.2d 209, 214 (1988).

Here, Plaintiffs characterize the video as one used to illustrate Amaya's induction, similar to how one might use an illustrative video to reconstruct the scene of an accident. They contend that, viewed in this way, the exhibit was not admissible for illustrative purposes because the child in the video was struggling and had to be

restrained, while undisputed evidence showed Amaya was calm and cooperative during the procedure.

The flaw in this argument is that both the Defendants and the trial court emphasized that this was not the purpose of the illustration. During this portion of Defendants' case, their expert was addressing Plaintiffs' theory that the induction should have proceeded more slowly. Defendants' expert sought to explain why the anesthesiology team tried to move Amaya more quickly to another "stage" in the process because young children, during this particular stage of induction, can become excitable and combative.

So the purpose of the video was not to illustrate something that happened to Amaya, but rather to illustrate a hypothetical scenario—one which the expert was describing in detail in his testimony—that Amaya's anesthesiology team sought to avoid.

Defendants were careful to point this out when questioning the expert: "Dr. Yasser, I want to be real clear about this. We're not showing a picture of what happened to Amaya or representing that this is Amaya. This is just an example of a child going through stage two and an induction, sevo induction so the Ladies and Gentlemen of the Jury can understand your testimony?" The expert responded, "Yes."

Similarly, the trial court emphasized this point to the jury, explaining that the video was "not to illustrate what transpired with Amaya, but to help you understand

something that can occur in the inhalation process to help you understand this witness's testimony about how an anesthesiologist, CRNAs do what they do." Thus, in our analysis of the admissibility and potential prejudice of the challenged video, we focus our review on the video's use as an illustration of the expert's hypothetical scenario, not as an illustration of events that actually occurred during Amaya's induction.

We begin with Plaintiffs' challenge based on lack of foundation. To lay the foundation for this type of illustrative exhibit, the proponent must demonstrate that the exhibit is a "fair and accurate portrayal" of the thing it seeks to illustrate. *Id.* at 344, 363 S.E.2d at 214. If there is conflicting evidence concerning the accuracy of the illustrative exhibit, the determination of whether to admit the exhibit "is a matter within the sound discretion of the trial judge." *Id.* at 345, 363 S.E.2d at 214.

Here, Defendants' expert testified that he had performed "tens of thousands" of similar inhalation inductions on children and saw children induced using sevoflurane every day. He further testified that he had viewed the video and that, based on his experience, the video illustrated "a child who is getting a normal mask induction and this would be on any kid on any day in any operating room in the United States." Finally, he testified that the video would assist him "to illustrate or to help explain" to the jury his testimony about the type of chaotic reactions that children can have during this stage of sevoflurane induction.

The trial court was well within its sound discretion to admit the exhibit based on this foundational testimony. Plaintiffs argue that the expert "did not know when or where [the video] was recorded" and "knew nothing about the child" in the video. But this is irrelevant. It was not even necessary that the video be real—it could have been an animated video, or a photo-realistic one created with computer-generated effects. What matters for purposes of foundation is that the expert established that the video was a fair and accurate representation of a procedure he was describing, based on his experience with "tens of thousands" of the same procedure on other children. Accordingly, the trial court did not abuse its discretion in this admissibility analysis.

Plaintiffs next argue that the video should have been excluded under Rule 403 of the Rules of Evidence because its probative value was "substantially outweighed by the danger of unfair prejudice." They contend that the "obvious purpose" of the video was to incite anxiety and emotion in the jury and exaggerate the difficulty of VanSoestbergen's work as a nurse anesthetist.

Rule 403 permits a trial court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *State v. Triplett*, 368 N.C. 172, 178, 775 S.E.2d 805, 808–09 (2015). We review a trial court's Rule 403 analysis for abuse of discretion. *Id.* at 178, 775 S.E.2d at 809.

Here, the challenged video had probative value—it provided a visual perspective of a complicated medical procedure described by an expert. Moreover, the trial court took steps to minimize the risk of any prejudicial effect from the video. Although there were differences between the video and Amaya's circumstances, the trial court addressed those by informing the jury that it was to consider the video solely for illustrative purposes and "not to illustrate what transpired with Amaya, but to help you understand something that can occur in the inhalation process."

In short, the trial court properly determined that the risk of potential prejudice or confusion was not so great as to substantially outweigh the probative value of this illustrative exhibit. The trial court's decision to admit this evidence was a reasoned one and not arbitrary. We therefore find no abuse of discretion in the admission of this illustrative video.

## III. Use of short-hand references to "Gus" and "Nurse Gus" at trial

Plaintiffs next argue that the trial court erred by permitting defense counsel to refer to VanSoestbergen as "Gus" and "Nurse Gus" during trial. Plaintiffs argue that this trial strategy, contrasted with references to physicians using the prefix "Doctor," downplayed VanSoestbergen's authority as a certified registered nurse anesthetist and caused the jury to view Gus as someone with less professional skill and authority than he actually possessed.

"The conduct of a trial is left to the sound discretion of the trial judge, and

absent abuse of discretion, will not be disturbed on appeal." *Gray v. Allen*, 197 N.C. App. 349, 352, 677 S.E.2d 862, 865 (2009). Under this narrow standard of review, we cannot find reversible error unless the trial court's ruling "was so arbitrary that it could not have been the result of a reasoned decision." *Kearney v. Bolling*, 242 N.C. App. 67, 72, 774 S.E.2d 841, 846 (2015).

The trial court's decision to permit VanSoestbergen to be referred to as "Nurse Gus" was well within the court's broad discretion. To be sure, the defense may indeed have used the references to "Nurse Gus" in part as a trial strategy. But, to be fair, Gus VanSoestbergen's last name is a tongue-twister for some, and even he testified that people at work often called him Gus for that reason. Moreover, Plaintiffs' counsel could—and did—emphasize VanSoestbergen's knowledge and expertise to the jury, which diminished any risk of prejudice from the short-hand reference.

Thus, the trial court's decision to permit defense counsel to refer to VanSoestbergen as "Gus" was a reasoned one, and well within the trial court's sound discretion in managing the trial proceeding. Accordingly, we find no abuse of discretion in the trial court's decision to permit this short-hand reference at trial.

## IV. Challenge to jury instructions

Plaintiffs next argue that the trial court erred by declining to instruct the jury on whether Amaya was "injured by the negligence *of the defendants*," which would have included both VanSoestbergen and his employer, the Charlotte-Mecklenburg

Hospital Authority, which Plaintiffs contend is "the largest hospital system in the western part of the state" and a party that is "financially responsible" for any judgment against VanSoestbergen. Instead, the trial court instructed the jury to find whether Amaya was "injured by the negligence of the defendant Gus VanSoestbergen" and then, in a separate portion of the instruction, explained that the hospital "would be responsible for any alleged acts of negligence by Gus VanSoestbergen." We hold that the trial court's instruction was proper and within the court's sound discretion.

When instructing a jury, the "framing and wording of the issues lies within the discretion of the trial judge." *Pittman v. First Protection Life Ins. Co.*, 72 N.C. App. 428, 432, 325 S.E.2d 287, 290 (1985). "This Court reviews jury instructions contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed." *State v. Blizzard*, 169 N.C. App. 285, 296–97, 610 S.E.2d 245, 253 (2005). "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." *Id.* at 297, 610 S.E.2d at 253.

The trial court's instructions were well within its sound discretion under this standard and did not mislead the jury. The factual issues to be decided by the jury

concerned acts by VanSoestbergen. The court properly instructed the jury on those issues. The court also instructed the jury that "the Charlotte-Mecklenburg Hospital Authority would be responsible for any alleged acts of negligence by Gus VanSoestbergen."

Thus, the jury properly was instructed both on the issues it must decide, and on the legal responsibility of the respective defendants. Indeed, the trial court may have rejected Plaintiffs' proposed instruction because it could have misled the jury. Had the jury been asked to consider the negligence of the hospital itself, it may have led to speculation about acts or omissions by medical professionals involved in Amaya's care who were not part of the claims tried in this case. Accordingly, we find no abuse of discretion in the trial court's instructions.

## V.     Trial court's instructions in response to jury questions

Finally, Plaintiffs argue that the trial court erred in its answers to questions from the jury during deliberations. Again, we reject this argument.

"A trial court's answer to a jury question is treated as an instruction to the jury." *Martin v. Pope*, 257 N.C. App. 641, 648, 811 S.E.2d 191, 197 (2018). Thus, as with the jury instruction analysis above, we review this issue for abuse of discretion, examining whether the trial court's framing and wording left no reasonable cause to believe the jury was misled or misinformed about the law. *Pittman*, 72 N.C. App. at 432, 325 S.E.2d at 290.

During deliberations, the jurors asked several questions, including some about the evidence they could consider in their deliberations. The trial court responded with the following instruction:

> No. 1, the question is: What is evidence? Evidence is the testimony of the witnesses and the exhibits or records that were offered into evidence. You may and should determine what evidence you believe to be – or you believe. . . . You may also consider any matters that you infer from the testimony and exhibits in the case, so long as any inference is reasonable and logically drawn from the testimony and the exhibits in the case.

Plaintiffs agree that this was an accurate statement of the law and they do not assert any error in this instruction standing alone.

Later in deliberations, the jury asked a specific question concerning the court's original instruction on the standard of care. At the same time, the jury submitted a note indicating that they were unable to reach a unanimous verdict.

The court thoroughly discussed with the parties how to respond to the jury's question. In a conversation stretching for nearly fifteen pages of the trial transcript, the parties speculated about what the jury likely was getting at with this question, particularly in light of the lack of unanimity. Ultimately, the trial court announced that it would simply repeat its original instruction on negligence and the standard of care, taken from pattern jury instructions, explaining that "I think if they listen to what I'm telling them that that will give them the answer."

Plaintiffs' counsel then stated that "I think you made your decision. I am not in any way requesting you change that." But counsel asked the court also to repeat the instruction, quoted above, that the trial court gave in response to the jury's question about the evidence the jury properly could consider.

The court responded that "I think the Court, in the exercise of its discretion, will just limit the answer to these four paragraphs which I believe answers what the – what they are seeking to know." After the jury returned to the courtroom, the trial court read the jury's question and gave the following explanation:

> What I'm going to do is repeat a portion of the jury instructions that I think provides an answer to that question. This does not say that this section is any more or less important than any other section. It is just simply the one that appears, to me, to be most responsive to your request.

The court then repeated its original instructions on negligence and the standard of care, which the parties agree were accurate statements of the law, taken from pattern instructions.

Plaintiffs contend that it was error not to also re-instruct the jury using the earlier instruction on evidence and inferences because, without that re-instruction, the court was "in effect implying to the jury that, contrary to its earlier instruction, all evidence and reasonable inferences therefrom could *not* be considered."

We do not agree that the trial court's re-instruction created any contradiction or confusion. The trial court emphasized to the jury that the instruction it chose to

repeat was no "more or less important than any other." And the instruction it chose to repeat was accurate and directly addressed the substance of the jury's question. Simply put, the trial court's decision to re-instruct in the way that it did was a reasoned one. Thus, under the narrow standard of review applicable to this issue, we cannot find that the trial court abused its discretion.

## Conclusion

For the reasons stated above, we find no error in the trial court's judgment.

NO ERROR.

Judges BRYANT and BERGER concur.